**Margaret J. SCHULTZ, Petitioner,**

v.

**UNITED STATES NAVY, Respondent.**

**Appeal No. 86–1195.**

United States Court of Appeals,
Federal Circuit.

Jan. 29, 1987.

---

Susan C. Rosen, of Rosen, Rosen & Hagood, Charleston, S.C., for petitioner.

Linda T. Maramba, of the Commercial Litigation Branch, Dept. of Justice, Washington, D.C., for respondent.

Before MARKEY, Chief Judge, and DAVIS and NIES, Circuit Judges.

NIES, Circuit Judge.

Petitioner Margaret J. Schultz appeals from the decision of the Merit Systems Protection Board, Case No. AT07528510366, 29 M.S.P.R. 186 (1985), dismissing her appeal from a termination of her employment on the grounds that the board lacked jurisdiction. Specifically, the board held that petitioner failed to establish that her resignation from her position was involuntary and, thus, that she was removed by an adverse action. We reverse.

### Background

Petitioner Schultz accepted a transfer of position to the Department of the Navy, Naval Weapons Station, Charleston, South Carolina, on June 19, 1983, as the housing manager on the base. In connection with her transfer, she was advanced over $3,300 in moving expenses on the condition that she remain in the position for twelve months.

There is no assertion by the agency that Ms. Schultz performed less than satisfactorily in her position. Indeed, her difficulties arose from her strenuous efforts to reduce waste, inefficiency, and health hazards which she perceived in the maintenance of housing on the base. As a result of extreme frustration in her efforts to that end, Ms. Schultz felt it necessary to consult her

physician in February, 1984. Following the advice of her physician, in late February she pursued the possibility of a transfer to a different position in the agency and, in early March, submitted a formal request for thirty days' leave from February 29 until March 30 for "rest for mental and health considerations." Ms. Schultz also, on or about that date, advised the agency that, if she were unable to transfer to a different position, she intended to resign on March 31, 1984, and to seek a disability retirement.

By notarized letter dated March 6, 1984, the physician whom Ms. Schultz consulted informed the agency that he had examined her on February 17, 1984. It was his opinion that, if she continued in her present position, the work would cause her harm mentally and emotionally and that he believed his patient to be "totally disabled for her present position."

On March 8, 1984, Ms. Schultz' supervisor notified her that her request for leave was denied because of lack of a medical certificate, that she was being carried since March 1 in an unauthorized absence status, and that her request for reassignment could not be granted. The supervisor enclosed a resignation form and advised that, if Schultz wished to resign earlier than March 31, the resignation should be returned as soon as possible. The supervisor stressed the importance of Schultz returning to work immediately or resigning immediately, since Schultz' "excessive" unauthorized absence (more than five days) constituted sufficient reason for disciplinary action up to removal. The supervisor acknowledged receipt of certain documents associated with her disability retirement, which were being forwarded to another office, and acknowledged Schultz' request for a waiver of repayment of relocation expenses, which would be discussed upon Schultz' return to work.

On March 13, 1984, Ms. Schultz submitted her resignation stating: "I cannot force myself to return to my position to expose myself to further deterioration of my health.... Since my request for annu-al leave to rest for health considerations has been disapproved, my only alternative is immediate resignation."

Ms. Schultz' resignation was accepted retroactive to March 1, 1984. On May 10, 1984, the agency demanded reimbursement of the $3,300 advanced for her relocation.

Schultz continued to pursue her disability retirement claim which was denied by the Office of Personnel Management on February 20, 1985. Following that denial, Schultz *pro se* immediately appealed to the MSPB seeking reinstatement on the ground that her resignation was coerced and that she had not been given the advice and assistance which she sought so that she resigned without understanding her rights. Further, she asserts she was given misleading advice that she would not have to repay the $3,300 if she resigned.

The presiding official ruled that appellant had failed to establish the board's jurisdiction over her appeal because appellant's resignation was voluntary under the applicable standard of *Fruhauf Southwest Garment Co. v. United States*, 126 Ct.Cl. 51, 111 F.Supp. 945, 951 (1953). The presiding official reasoned that Ms. Schultz was faced with a "tough choice to return to work where she felt she could not function, resign, or face an adverse action for absence without leave." The difficulty of her decision, per the presiding official, did not make her choice involuntary under the *Fruhauf* standard. The full board dismissed her petition for review. Schultz, again *pro se*, filed suit in the district court for South Carolina which, upon motion of the government, transferred the case to this court.

The determinative underlying facts of this case are not in dispute. Thus, the sole issue is whether, under the correct legal test for coercion, petitioner proved that her resignation was in fact involuntary.

## OPINION

◼ A retirement request initiated by an employee is presumed to be a voluntary act, *Christie v. United States*, 207 Ct.Cl.

333, 518 F.2d 584, 587 (1975). By its nature a voluntary action does not implicate the procedures and rights of an employee associated with an adverse action. However, an ostensibly voluntary resignation which was submitted as a result of agency coercion or because of improper advice on its consequences must be treated the same as an adverse action. *Perlman v. United States*, 203 Ct.Cl. 397, 490 F.2d 928, 933 (1974).

■ As has been noted before in our decisions, the board's jurisdiction and the merits of an alleged involuntary separation are inextricably intertwined. *Dumas v. Merit Systems Protection Board*, 789 F.2d 892, 894 (Fed.Cir.1986). Thus, if it is established that a resignation is involuntary, the board not only has jurisdiction, but also the employee wins on the merits and is entitled to reinstatement. *See Covington v. Department of Health and Human Services*, 750 F.2d 937, 943 (Fed.Cir.1984).

■ A resignation is not voluntary where an agency imposes the terms of an employee's resignation, the employee's circumstances permit no alternative but to accept, and those circumstances were the result of improper acts of the agency. *See Edgerton v. Merit Systems Protection Board*, 768 F.2d 1314, 1317 (Fed.Cir.1985); *Scharf v. Department of the Air Force*, 710 F.2d 1572, 1574 (Fed.Cir.1983); *Taylor v. United States*, 219 Ct.Cl. 86, 591 F.2d 688, 691 (1979). As the cited authorities hold, however, where an employee is faced merely with the unpleasant alternatives of resigning or being subject to removal for cause, such limited choices do not make the resulting resignation an involuntary act. On the other hand, inherent in that proposition is that the agency has reasonable grounds for threatening to take an adverse action. If an employee can show that the agency knew that the reason for the threatened removal could not be substantiated, the threatened action by the agency is purely coercive. *Cosby v. United States*, 189 Ct.Cl. 528, 417 F.2d 1345, 1355 (1969); *Autera v. United States*, 182 Ct.Cl. 495, 389 F.2d 815, 817 (1968); *Rich v. Mitchell*, 273 F.2d 78, 79 (D.C.Cir.1959), *cert. denied*,

368 U.S. 854, 82 S.Ct. 91, 7 L.Ed.2d 52 (1961).

■ In the instant case, the issue is the voluntariness of Ms. Schultz' resignation as of March 1, 1984. That she might have submitted a resignation voluntarily as of March 30, had she been granted leave, is immaterial to the voluntariness of her resignation on March 1. An immediate resignation with an effective date of March 1 were conditions imposed by the agency if she wished to avoid an adverse action based on AWOL. Those conditions and the forced choice imposed upon her were clearly improper on the record of this case. *Accord Paroczay v. Hodges*, 297 F.2d 439 (D.C.Cir.1961); *see also* Federal Personnel Manual (FPM) 752–11(b)(b) (1984) and cases cited therein regarding improper time pressures.

■ Ms. Schultz' retroactive resignation was specifically stated by her to be necessary because of the denial of leave. In the face of the medical certification that she was unable at that time to perform her work, the agency acted coercively in denying her leave request and forcing a retroactive resignation. While Ms. Schultz' supervisor may have been personally unaware of the physician's evaluation of her condition at the time the supervisor denied leave on March 8, that explanation cannot justify the agency's action in failing to reconsider and approve leave for Ms. Schultz once her doctor's certification of March 6, which fully supported her leave request, was received. Upon receipt of the certificate, it cannot seriously be contended that the agency did not know that its threat of adverse action for AWOL could not be substantiated.

It must be noted that Ms. Schultz' request to use annual leave because of illness, instead of requesting sick leave, is not probative that she was not in fact sick. Such a usage of annual leave is explicitly approved in the Federal Personnel Manual, which provides:

304. GRANTING ANNUAL LEAVE
    b. Agency authority.
      (3) *Annual leave in lieu of sick leave*. Approved absence otherwise

chargeable to sick leave may be charged to annual leave if requested by the employee before the time the employee has exercised the right to have sick leave charged for an absence and approved by the agency. FPM 630–8 3–4(b)(3). Ms. Schultz' request to use annual leave for reasons of health was entirely in accordance with that approved procedure.

Compounding its error, a week later the agency accepted a retroactive resignation which, on its face, was tendered because of the denial of leave. By the date that her resignation was submitted, March 13, the validity of Ms. Schultz' claim of serious health problems at least sufficient for leave was no longer open to question. The agency knew or should have known that a charge of AWOL was no longer a viable basis for Ms. Schultz' removal. The agency also knew that the resignation was made retroactive solely to avoid the AWOL charge. No other reason for making the resignation retroactive, *e.g.*, some other advantage to Ms. Schultz, is suggested by the agency. Pressured by time considerations and threatened with a charge of AWOL resulting from the improper denial of leave, Ms. Schultz' act of resignation must be found to be the result of coercion, not a voluntary act. The board's holding that Ms. Schultz simply had a "tough choice" and chose resignation is legally in error under the circumstances of this case. In view of the uncontroverted state of her health, the agency could not legitimately confront Ms. Schultz with the choice of returning to work, resigning retroactively, or facing AWOL charges. Moreover, here we have no after-the-fact attempt to transform a situation. All of the circumstances concerning petitioner's health and her reasons for resigning were known to the agency at the time it accepted her resignation.*

Lest our silence be taken as approval, we specifically do not rule on the propriety of other questionable actions by the agency: refusal to grant petitioner the conference she sought to grieve her difficulties; acceptance of her resignation without counselling her of the advantages of not resigning where a resignation is tendered for reasons of health, *see* FPM 715–2–5 ("Unnecessary and Inadvisable Resignations"); *Jovanovich v. Veterans Administration*, 3 MSPB 510, 3 M.S.P.R. 438, 440 (1980) (untimeliness excused by failure to advise of rights); and the agency's alleged incorrect advice to petitioner on the effect of resignation on her obligation to repay moving expenses. The MSPB gave no consideration to these matters and we find it sufficient to rest our reversal on the limited grounds set forth above.

For the foregoing reasons, the decision of the MSPB holding that it had no jurisdiction is reversed. Petitioner proved that her resignation was involuntary, which establishes jurisdiction and entitles her to reinstatement. Accordingly, the case is remanded to the board for entry of an order granting appropriate relief.

REVERSED.

---

\* An agency is not required, of course, to indefinitely retain an employee on its rolls who cannot work due to poor health. The proper procedure here would have been for the agency to have granted leave (including leave without pay, if necessary) and later to have removed Ms. Schultz for reasons of inability to perform the duties of her position or, alternatively, for excessive absence even though excused. Removal for AWOL was not, however, a possibility.