Thomas **LATHAM**, Petitioner,

v.

**UNITED STATES POSTAL SERVICE, Respondent.**

**No. 90–3134.**

United States Court of Appeals, Federal Circuit.

July 17, 1990.

---

Thomas Latham, Chicago, Ill., argued pro se.

Joan C. Goodrich, U.S. Postal Service, Office of Labor Law, Washington, D.C., argued for respondent.

Before MARKEY * and MICHEL, Circuit Judges, and BREWSTER, District Judge.**

MICHEL, Circuit Judge.

Thomas Latham appeals the order of the Merit Systems Protection Board dismissing his petition for lack of jurisdiction based on its finding that his resignation was voluntary. *Latham v. United States Postal Serv.*, Docket No. CH07528910446 (MSPB Aug. 1, 1989). The Administrative Judge's (AJ's) initial decision became final December 13, 1989, upon denial of review by the full Board, 42 M.S.P.R. 489, and this appeal followed. Because substantial evidence supports the AJ's finding that Latham resigned voluntarily, the Board lacked jurisdiction. Accordingly, we affirm.

## BACKGROUND

Latham was employed as a Bulk Mail Clerk with the United States Postal Service (agency) in Chicago, Illinois, for over sixteen years. On December 8, 1987, Latham did not report to work. Six days later Latham submitted a note from a physician which stated that Latham's condition "was

such that he will need an indefinite leave of absence from his job." Periodically thereafter, Latham submitted similar statements from the same doctor. He also submitted a request for leave without pay, for his continuous absence from duty starting December 8, 1987. Based on assertions in the request and the supporting physician's note, Latham's unpaid leave was approved. *Latham*, slip op. at 2.

Unknown to the agency when it approved Latham's leave, he had accepted employment with the Chicago Police Department as a probationary police officer and on December 7, 1987, had begun training in its Police Academy. Later, when the Postal Service became aware that Latham was employed by the Police Department, it assigned Postal Inspector Muraski to investigate the circumstances surrounding Latham's apparent performance of another full-time job while on approved Postal Service leave. *Id.* at 2–3.

First, the Postal Service verified, by correspondence with the Chicago Police Department, Latham's employment with them. *See* Respondent's Appendix, *Latham v. United States Postal Serv.*, No. 90–3134, at 18 (Fed.Cir. filed Apr. 10, 1990) [hereinafter Respondent's App.]. Then, approximately two weeks later, Muraski interviewed Latham at the Chicago Police Academy. *Latham*, slip op. at 3. The record reflects the interview began in the presence of a detective from the Chicago Police Department. Respondent's App. at 12 & 20. Muraski questioned Latham about the medical statements he periodically submitted, while attending the sixteen-week course at the Academy, to substantiate his leave without pay status. Muraski also questioned his instructor who found Latham physically fit and able to pass all physical requirements of academy training, including one-on-one combat. *Id.* at 12.

Latham alleges that during the interview Muraski threatened him with removal if he did not resign, but the AJ found to the

* Circuit Judge Markey vacated the position of Chief Judge on 27 June 1990.

** The Honorable Rudi M. Brewster, District Judge, United States District Court for the Southern District of California, sitting by designation.

contrary. *Latham,* slip op. at 4. The AJ accepted the Inspector's testimony that she made no such threat. The AJ also noted that Muraski lacked authority to demand or accept a resignation. *Id.*

Latham also alleges that Muraski asked the detective what the Police Department intended to do about the situation. The AJ found that even if Muraski asked about the Police Department's intentions, that did not coerce Latham into resigning from his Postal Service job. *Id.* at 4–5. The AJ further found that Muraski did not have authority to, nor did she, recommend that the Police Department take any action against Latham. *Id.* at 4.

Thirteen days after the questioning, Latham submitted his resignation from the Postal Service. On the resignation form he wrote he was resigning "to pursue other employment which I hope to be more rewarding and fullfilling [sic]." *Id.* at 3. Two Personnel Assistants who were present for the exit interview and accepted Latham's resignation advised Latham that the decision to resign must be a voluntary one that only he could make. *Id.* The record also reflects they told him that even after signing it he was free to tear up the resignation form rather than submit it. Respondent's App. at 28. Finally, Latham waited a full year before asserting that his resignation had been coerced. *Latham,* slip op. at 1.

Latham argued before the Board and now argues here that his resignation was involuntary, the result of coercion during the Academy interrogation, and thus the Board has jurisdiction to hear his case. The AJ found the resignation was not coerced but voluntary. Central to his appeal is a challenge to that finding.

## OPINION

This court reviews a decision of the Board to determine if it is arbitrary, capricious, an abuse of discretion, procedurally defective, or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1988). Factual findings may only be reversed if unsupported by substantial evidence. *Id.;*

*Bradley v. Veterans Admin.,* 900 F.2d 233, 234 (Fed.Cir.1990).

As a general rule, "resignations are presumed to be voluntary." *Christie v. United States,* 518 F.2d 584, 587, 207 Ct.Cl. 333 (1975). A voluntary employee action simply does not invoke the procedures and rights that the Civil Service Reform Act mandates for an adverse agency action. *Schultz v. United States Navy,* 810 F.2d 1133, 1136 (Fed.Cir.1987). If however, the employee can demonstrate that the resignation was involuntary, then it must be treated as an adverse action, which invokes the Act, allowing the employee to appeal to the Board (and ordinarily entitling him to reinstatement and back pay). *Id.* A resignation is "not voluntary where an agency imposes the terms of an employee's resignation, the employee's circumstances permit no alternative but to accept, and those circumstances were the result of improper acts of the agency." *Id.*

### I.

Latham contends that during the interview Muraski demanded his resignation under the threat that he would be fired from his postal job if he did not resign. The AJ found that Muraski "credibly testified that she did not demand [Latham's] resignation." *Latham,* slip op. at 4. The AJ found that the Inspector did not even have the authority to accept Latham's resignation or to fire him. *Id.* Latham's own testimony was not credited. That Latham waited a year before claiming coercion did not bolster his credibility. Latham has failed to present any persuasive basis for this court to reverse these credibility determinations. *See Hambsch v. Department of Treasury,* 796 F.2d 430, 436 (Fed.Cir. 1986).

### II.

The AJ also found that even if Latham had been threatened by Inspector Muraski, such a threat would not be improper because the agency had a valid basis for taking disciplinary action, including removing Latham. *Latham,* slip op. at 4. We have stated before that when "an employee

is faced merely with the unpleasant alternatives of resigning or being subject to removal for cause, such limited choices do not make the resulting resignation an involuntary act." *Schultz,* 810 F.2d at 1136. The agency's basis for an adverse action included Latham's request for and receipt of leave without pay, allegedly due to a medical condition that precluded the performance of his postal clerk's job, but really to take new employment, which he did, and also his misrepresentations that he was unfit for duty as a postal clerk when in fact he successfully performed all physical tasks required of Police Academy trainees.

■ Plainly, Latham used his unpaid leave to take another job. Doing so was a clear violation of Postal Service regulations. *See* 39 C.F.R. § 447.23 (1990) ("An employee may not engage in outside employment ... that is not compatible with the full and proper discharge of the duties and responsibilities of his Postal Service employment."); *Postal Employee & Labor Relations Manual* § 514.25 (June 15, 1982) (Issue 7) (Leave without pay "is not granted for the purpose of enabling an employee to 'try-out' or to accept other employment."). Because this violation is so clear, we need not decide whether the misrepresentations separately justified removal. Because taking leave without pay to accept employment with the Chicago Police Department violated Postal Service regulations, there is substantial evidence to support the AJ's finding that even assuming a threat of removal was made, it was not improper.

The AJ also found that the agency did not impose the terms of Latham's resignation. *Latham,* slip op. at 5. Latham waited nearly two weeks from the date of his interrogation to submit his resignation. Thus, the AJ found "[h]e did not act under time pressure...." *Id.* Moreover, Personnel Assistants duly advised him that the decision to resign must be his own and that he could tear up his resignation. Thus, the AJ found Latham elected to resign and chose the time of his resignation. The AJ also found that Latham did have an alternative: He "could have waited for the agency to take some administrative action such as cancelling his leave or initiating disciplinary action. He could have then challenged the agency's action through appropriate administrative channels." *Id.* Substantial evidence supports the AJ's findings that the agency did not impose the terms of Latham's resignation and that Latham did have an alternative.

### III.

Latham also argues he believed his new job with the Police Department could have been jeopardized because he was interrogated in the presence of a representative of his new employer. He seems to imply he resigned from the Postal Service only for fear that otherwise the agency would persuade the Chicago Police Department to dismiss him. We might question whether the government should interrogate an employee on leave in the presence of his new employer, absent some specific need to involve the new employer. But this case presents no occasion to decide whether, assuming that questioning Latham at the Academy was improper, he is entitled to relief. That is so for two reasons. First, Latham's express complaint is that the Postal Service coerced his resignation by its improper threat of removal. But the agency properly could have threatened to remove him from the Postal Service. Therefore, the resignation, even if it followed such a threat, would remain lawful and voluntary. Second, his resignation is not necessarily tainted simply because the agency had urged Latham's new employer to reconsider his employment. That would depend on whether his resignation resulted from such urgings. The AJ found Latham's resignation did not result from anything said by Muraski that might have gotten him fired by the Chicago Police Department. *Id.* at 4–5.

Moreover, the AJ found Muraski did not recommend that the Police Department take any action against Latham. *Id.* at 4. The AJ also found Muraski lacked the authority to recommend Latham's removal from the Police Department. *Id.* at 4. Accordingly, the AJ found no unlawful or

coercive conduct by the agency in the manner or fact of Latham's Academy interrogation, and substantial evidence supports that finding. *See Latham*, slip op. at 4–5.

### CONCLUSION

The AJ found that Latham's decision to resign was voluntary and not the product of threats from Muraski or the involvement of the Chicago Police in the interrogation. We cannot say these findings are unsupported by substantial evidence. Thus, Latham did not demonstrate that the terms of his resignation were imposed by the agency, that he had no alternative but to accept the agency's terms, and those circumstances were the result of improper agency action. The decision of the Board that it lacked jurisdiction is therefore

AFFIRMED.