**Robert V. BAMBER, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 98–605C.**

United States Court of Federal Claims.

Oct. 29, 1999.

Norman A. Murdock and John C. Murdock, Cincinnati, Ohio, for plaintiff.

Mark A. Melnick and Lawrence N. Minch, with whom were Assistant Attorney General Frank W. Hunger and David M. Cohen, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

This case arises out of the resignation of Robert V. Bamber as President of Cherry Grove Savings and Loan (Cherry Grove). In a three count complaint, plaintiff asserts that the government violated his Fifth Amendment rights by denying him due process, selectively enforcing federal regulations against him, and taking his property without compensation. Pending is defendant's motion to dismiss or in the alternative, for summary judgment. During oral argument, held on October 19, 1999, plaintiff withdrew counts one and two of the complaint. As for count three, we grant defendant's motion to dismiss pursuant to RCFC 12(b)(4).

## FACTUAL BACKGROUND [1]

Plaintiff had a distinguished career in the banking industry. Beginning in 1952, plaintiff held a variety of jobs both as a bank regulator for the federal government and the state of Ohio as well as positions with two different banks in Florida. In May of 1970, plaintiff began working for Cherry Grove as Vice–President. In 1984, Cherry Grove made plaintiff President of the institution.

Between 1974 and 1984, Cherry Grove's eight board members owned equal shares of the company. In 1984, plaintiff acquired a loan to purchase the shares of two directors. In order to purchase the stock, plaintiff needed to borrow money. Plaintiff borrowed money from Cherry Grove. The terms of the loan are disclosed in plaintiff's complaint. They are not relevant at this stage of the proceeding.

Although both federal and state regulators conducted six subsequent investigations, they failed to detect or were not alarmed by this loan. In short, until 1991, federal or state regulators never provided any indication to plaintiff that the loan might be problematic. Instead, plaintiff believed that his actions were well within the letter of the law.

In 1991, state and federal regulators mandated that Cherry Grove enter into a "Supervisory Agreement" arising out of its "unsafe and unsound banking practices." Subsequently, both state and federal regulators commenced another joint supervisory examination. On August 5, 1992, at the end of that six-week investigation, plaintiff, other Cherry Grove representatives, and state and federal regulators met. At that meeting, government regulators suggested that plaintiff was overcompensated and had "seriously underpaid" his loan to Cherry Grove. Nineteen days later, the Superintendent of the Ohio Division of Savings and Loan Associations convened another meeting between plaintiff and state and federal regulators.

At that meeting, on August 24, 1992, regulators told plaintiff that if he did not resign his position, or if the Cherry Grove Savings and Loan did not remove him, they were going to use administrative procedures to oust plaintiff from his position as President of Cherry Grove. Plaintiff was advised that he had twenty-four hours to resign his position. Furthermore, plaintiff was given no opportunity to address the examiners. Regulators also threatened to pursue criminal violations against both plaintiff and Cherry Grove's board of directors if Plaintiff did not resign within twenty-four hours.

---

1. The facts are drawn exclusively from plaintiff's  complaint.

Plaintiff believed that state or federal regulators would never give him a fair hearing. So, rather than face the specter of what he thought would be a one-sided public hearing, plaintiff resigned the following day. He subsequently sold his shares in Cherry Grove.

Plaintiff filed a takings claim against the state of Ohio. That state's court dismissed the complaint because plaintiff did not utilize the administrative remedies available to him. *See Bamber v. Ohio Dep't of Commerce,* 1995 WL 318772 (Ohio Ct.App. May 25, 1995). The plaintiff subsequently filed a complaint here. The case now stands at defendant's motion to dismiss.

## DISCUSSION

RCFC 12(b)(4) permits this court to dismiss a matter for a failure to state a claim upon which relief may be granted. "A motion for judgment on the pleadings should be granted only where it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of his claim." *Owen v. United States,* 851 F.2d 1404, 1407 (Fed.Cir.1988)(en banc).

Plaintiff's first two claims allege violations of his Fifth Amendment Due Process and Equal Protection rights. Those two counts were dismissed voluntarily by plaintiff during oral argument.

Plaintiff's third claim is within our jurisdiction but ultimately fails pursuant to RCFC 12(b)(4). Plaintiff alleges that defendant's actions were tantamount to a regulatory taking. As refined at oral argument, plaintiff alleges that the act of coercing his resignation was so contrary to fundamental notions of due process that it amounts to a taking because the action "does not substantially advance legitimate state interests." *Agins v. City of Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980).

Justice Holmes developed the concept of a regulatory taking when he explained: "The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415, 43 S.Ct. 158, 67 L.Ed. 322 (1922). The Supreme Court further delineat-

ed when a regulatory taking occurs in *Williamson Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). In that case, respondent's predecessor in interest had purchased land. After the state's planning commission approved the development of the tract, the commission altered the relevant regulations and applied them retroactively, thereby limiting the number of residential properties that could be developed on the property. The developer did appeal his decision to the Board of Zoning Appeals, but on remand to the commission, the developer could not persuade the commission to agree to the changes he desired. Rather than seek variances under the commission's scheme, the developer permitted his mortgage to lapse and respondent became the owner of the land. Respondent also failed to seek variances and instead filed a civil rights suit in federal district court.

Although respondent won in both district court and at the appellate level, the Supreme Court reversed. It concluded that until there is an analysis of "the effect the commission's application of the zoning ordinance and subdivision regulations had on the value of respondent's property and investment-backed profit expectations," it could not determine if a taking occurred. *Id.* at 200, 105 S.Ct. 3108. The Court concluded that a taking claim was premature until respondent had "obtained a final decision ... regarding the application of the zoning ordinance." *Id.* at 190 n. 11, 105 S.Ct. 3108. *See also Mac-Donald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 350, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986).

In this case, defendant's argument that plaintiff failed to exhaust his administrative remedies is particularly relevant here. As plaintiff acknowledges in his complaint, both federal and state regulators threatened him with removal from office. Before either entity involved carried out its threat, however, he resigned, thereby, forever confusing the issue of whether either or both groups of regulators were going to remove him. Not only does this preclude plaintiff from now arguing that *federal* regulators took his position from him, but it assumes the court would

have agreed that doing so was improper. By not calling the regulator's bluff, in short, plaintiff kept the administrative process from beginning—much less producing a final result.

Furthermore, we cannot agree with the plaintiff's argument that defending himself before OTS would have been futile.[2] Although the banking industry was under regulatory pressure in the early 1990s, we will not assume bad faith on the part of bank regulators. Even if they had been openly hostile to the management of banks at that time, and to plaintiff's management in particular, the court cannot pre-assume that self defense was pointless.

Plaintiff had the right to an administrative hearing under Ohio Rev.Code Ann. § 1151.18. He also would have had the right to judicial review of this hearing under § 119.12. Similarly, if the federal government initiated a removal proceeding against the plaintiff, plaintiff would have had a right to a hearing under 12 U.S.C. § 1818(e).

Similarly, plaintiff's contention that his resignation was involuntary is on its face insufficient. The United States Court of Appeals for the Federal Circuit has held that when "an employee is faced merely with the unpleasant alternative of resigning or being subject to removal for cause, such limited choices do not make the resulting resignation an involuntary act." *Latham v. U.S. Postal Service,* 909 F.2d 500, 502–03 (Fed.Cir.1990) (quoting *Schultz v. United States Navy,* 810 F.2d 1133, 1136 (Fed.Cir.1987)). Admittedly, *Latham* and *Schultz* discuss resignation in the context of federal employment. Nonetheless, these cases demonstrate that the voluntariness standard has a high threshold, which plaintiff's assertions, even if true, do not overcome. The fact that plaintiff chose to resign rather than defend himself does not affect the voluntariness of his resignation. Even assuming that plaintiff had a property right to serve as President of Cherry Grove and own stock in Cherry Grove, he *voluntarily* waived any Constitutional protections for those rights when he resigned.

Even assuming plaintiff's claims were ripe, they do not state a cause of action. Plaintiff alleges that the coercive nature of the meeting itself constituted a takings for Fifth Amendment purposes, because this conduct did "not substantially advance legitimate state interests." *Agins,* 447 U.S. at 260, 100 S.Ct. 2138. This alternative takings analysis, first alluded to in *Agins,* has not had a fruitful life. The only examples of which this court is aware, in which this approach has clearly been outcome determinative, have been the decisions in *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), and *Dolan v. City of Tigard,* 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994). Neither decision helps plaintiff.

In *Nollan,* the Supreme Court examined a zoning commission's requirement that an individual grant an easement to the public on his beachfront property. The Court concluded that this constituted an impermissible condition on the grant of a zoning variance and that the regulatory action did not substantially advance a governmental interest. *Nollan,* 483 U.S. at 834–36, 107 S.Ct. 3141. Accordingly, it concluded that the exaction constituted a taking.

Subsequently, in *Dolan,* the Court noted the proper test for a zoning condition is whether an essential nexus exists between the permit condition and a legitimate state interest. In that case, plaintiff sought to enlarge her plumbing and electrical supply store. As a condition to permitting expansion, the city required plaintiff to dedicate some of her land for use as a pedestrian walkway. The Court held that there was an insufficient connection between the grounds for the issuance on the one hand, and the exaction of a right of way on the other. *Dolan,* 512 U.S. at 394–95, 114 S.Ct. 2309.

Both *Nollan* and *Dolan* apply *Agins* narrowly to circumstances in which regulators

---

**2.** The futility exception "simply serves 'to protect property owners from being required to submit multiple applications when the manner in which the first application was rejected makes it clear that no project will be approved.'" *Howard W. Heck, and Associates, Inc. v. United States,* 134 F.3d 1468, 1472 (Fed.Cir.1998)(quoting *Southern Pac. Transp. Co. v. City of Los Angeles,* 922 F.2d 498, 504 (9th Cir.1990)).

attempt, without any real basis for doing so, to create public access to privately held real property. It has not been extended further, as pointed out by Justice Breyer in his dissent in *Eastern Enterprises v. Apfel*, 524 U.S. 498, 554, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998) (Breyer, J., dissenting). Plaintiff's claim, in short is either a tort claim or a substantive or procedural due process claim; it is not a takings claim. As a result, the complaint cannot survive defendant's motion to dismiss pursuant to RCFC 12(b)(4).

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted. Accordingly, the clerk is directed to dismiss the complaint. Each party shall bear its own costs.