NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3110

LINDA A. WILLIAMS,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent,

and

DEPARTMENT OF THE ARMY,

Intervenor.


Linda A. Williams, of Smyrna, Delaware, pro se.

Calvin M. Morrow, Attorney, Office of the General Counsel, Merit Systems Protection Board, of Washington, DC, for respondent.  With him on the brief were B. Chad Bungard, General Counsel, and Keisha Dawn Bell, Deputy General Counsel.

Elizabeth A. Speck, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for intervenor.  With her on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Franklin E. White, Jr., Assistant Director.

Appealed from:  Merit Systems Protection Board

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3110

LINDA A. WILLIAMS,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent,

and

DEPARTMENT OF THE ARMY,

Intervenor.

Petition for review of the Merit Systems Protection Board
in PH 0752080427-I-1.

_____

DECIDED:  November 5, 2009

_____

Before NEWMAN, LOURIE, and BRYSON, <u>Circuit Judges</u>.

PER CURIAM.

### DECISION

Linda A. Williams challenges the decision of the Merit Systems Protection Board

dismissing her appeal from her removal from her position for unacceptable performance.

We <u>affirm</u>.

BACKGROUND

Prior to her removal in 2008, Ms. Williams was employed as an auditor with the Delaware Army National Guard. Following her placement in both an informal and a formal performance improvement plan, Ms. Williams received a performance rating of "unacceptable" for the appraisal period January 18, 2007, through November 24, 2007. The performance appraisal cited various reasons for the unacceptable rating, including failure to plan and execute specific auditing assignments properly, lack of key skills required to perform audits, and difficulty in working with others. On January 3, 2008, the Department of the Army presented Ms. Williams with a notice of proposed removal, citing "unacceptable performance" as the reason for the proposed action.

Ms. Williams filed an appeal of her performance appraisal with the State Review and Appeals Board. Following a two-day hearing, the State Review and Appeals Board recommended upholding the unacceptable rating. The Adjutant General of Delaware agreed with that recommendation, and the Army then sent Ms. Williams a termination notice dated April 10, 2008.

During the pendency of her State Review and Appeals Board appeal, Ms. Williams also pursued a complaint with the Equal Employment Opportunity ("EEO") office of the Delaware National Guard, in which she alleged discrimination and retaliation on the basis of religion, disability, and a prior EEO complaint. In an effort to resolve the EEO matter, counsel for the Army and Ms. Williams's non-attorney representative engaged in settlement negotiations beginning in early April 2008.

On April 25, 2008, Ms. Williams entered into a settlement agreement. Ms. Williams agreed to withdraw her EEO complaint in exchange for being permitted to

resign from her position and having her "unacceptable" performance rating removed from all personnel and agency files. The settlement agreement a included a provision stating that Ms. Williams "acknowledge[d] that she ha[d] read and underst[ood] this settlement agreement and knowingly and voluntarily accept[ed] and agree[d] to its provisions." Accompanying the settlement agreement was a signed resignation by Ms. Williams, effective as of April 26, 2008.

On May 8, 2008, Ms. Williams filed an appeal with the Merit Systems Protection Board, claiming that her resignation was involuntary. Ms. Williams asserted that she was "coerced and forced to accept [the] agreement" because the Army had incorrectly informed her that she had no appeal rights and because she could not afford an attorney. On May 9, 2008, the administrative judge who was assigned to the case issued an acknowledgement order stating that resignations are "presumed to be voluntary and, consequently, are not appealable to the Board." Accordingly, the administrative judge ordered Ms. Williams "to file evidence and argument to prove this action is within the Board's jurisdiction."

In June and August, Ms. Williams participated in a series of teleconferences among the parties and the administrative judge to discuss the issue of the Board's jurisdiction over her appeal. In addition to discussing the effect of the settlement agreement, the Army argued that Ms. Williams lacked appeal rights to the Board as a result of her status as a National Guard employee appointed under 32 U.S.C. § 709. In a final teleconference on August 13, 2008, Ms. Williams withdrew her appeal on the record. Ms. Williams acknowledged that she understood that withdrawing her appeal would prevent her from refiling an appeal with the Board regarding the same dispute.

That same day, the administrative judge issued an order finding Ms. Williams's withdrawal to be voluntary and dismissing the appeal.

Notwithstanding the withdrawal of her appeal, Ms. Williams petitioned for review by the full Board. The full Board denied the petition. Ms. Williams now seeks review by this court.

DISCUSSION

In challenging the dismissal of her appeal, Ms. Williams first asserts that her resignation under the settlement agreement was involuntary because she entered into the agreement under time pressure, under duress, and without being informed of her appeal rights.

Under our case law, resignations are presumed to be voluntary and the Board lacks jurisdiction to hear an appeal from an employee who has voluntarily resigned. Tretchick v. Dep't of Transp., 109 F.3d 749, 751 (Fed. Cir. 1997). As a result, an employee claiming an involuntary resignation has the burden to prove that the resignation resulted from duress, coercion, or misrepresentation by the agency. Id.; see also Scharf v. Dep't of the Air Force, 710 F.2d 1572, 1574 (Fed. Cir. 1983). In determining whether a resignation is voluntary, the decisionmaker must "examine the surrounding circumstances to test the ability of the employee to exercise free choice." Scharf, 710 F.2d at 1574.

Ms. Williams has not pointed to any evidence suggesting that she did not exercise free choice in deciding to enter into the settlement agreement and resign her position. With respect to her claim of time pressure, the evidence shows that the settlement negotiations, in which Ms. Williams participated actively, lasted more than three weeks.

three weeks. Throughout that period, Ms. Williams, assisted by her representative and an attorney, suggested terms and requested changes in the Army's proposed terms. She therefore had ample time to consider her options and assist in crafting a settlement agreement that was acceptable to her.

With respect to her claim of duress, Ms. Williams asserts that the Army "place[d] [her] in what appeared to be a choice between two unpleasant outcomes[.]" However, "[t]he fact that an employee is faced with an inherently unpleasant situation or that his choice is limited to two unpleasant alternatives does not make an employee's decision any less voluntary." Covington v. Dep't of Health & Human Servs., 750 F.2d 937, 942 (Fed. Cir. 1984); see also Schultz v. U.S. Navy, 810 F.2d 1133, 1136 (Fed. Cir. 1987) ("[W]here an employee is faced merely with the unpleasant alternatives of resigning or being subject to removal for cause, such limited choices do not make the resulting resignation an involuntary act."). Although Ms. Williams faced a difficult decision, that did not make her resignation involuntary. To the contrary, in signing the agreement, she expressly acknowledged that she understood the agreement and "knowingly and voluntarily accept[ed] and agree[d] to its provisions[.]" She further acknowledged that she had had the opportunity to consult with an attorney, which she did on at least one occasion during the negotiations. Her active involvement in the discussions shows that she was aware of her options, weighed them, and voluntarily chose the benefits afforded by resignation (rather than removal) and expungement of her "unacceptable performance" rating.

With respect to Ms. Williams's argument that she was not informed of her appeal rights, Ms. Williams asserts that the Army "informed my representative, numerous times, that I did not have appeal rights." The Army's position that Ms. Williams lacked appeal rights was based on its interpretation of 32 U.S.C. § 709, the statute governing her appointment to the National Guard, which provides that the right of appeal for persons employed under that section "shall not extend beyond the adjutant general of the jurisdiction concerned," id. § 709(f)(4). The Army's position with respect to Ms. Williams's appeal rights was correct: Section 709(f) provides that a National Guard technician such as Ms. Williams "may, at any time, be separated from his technician employment for cause by the adjutant general of the jurisdiction concerned," and any right of appeal from that decision "shall not extend beyond the adjutant general." 32 U.S.C. § 709(f)(2), (4). Contrary to Ms. Williams's contention, the statutory limitation on appeal rights is not restricted to disciplinary actions, but applies to removals generally, which include a removal for unacceptable performance, as in Ms. Williams's case. Accordingly, the evidence fails to support Ms. Williams's contention that the Army gave her misinformation regarding her appeal rights or that any other aspect of the Army's conduct rendered her resignation involuntary.

Second, Ms. Williams argues that her withdrawal of her appeal on August 13, 2008, was invalid because (1) the administrative judge erroneously advised her that she lacked appeal rights, (2) the administrative judge did not allow her time to consider the withdrawal, (3) the administrative judge did not explain the consequences of a withdrawal, and (4) Ms. Williams's judgment was impaired by insomnia and other "mental health issues." Under the Board's precedent, "[t]he withdrawal of an appeal is

an act of finality that removes the appeal from the Board's jurisdiction." Dixon v. Office of Pers. Mgmt., 44 M.S.P.R. 331, 335 (1990) (Board lacked jurisdiction over an appeal after the appellant "voluntarily and unequivocally withdrew his appeal during [a] telephone conference call").

The Board has held that under some circumstances an appellant's acquiescence in statements by an administrative judge will not suffice to effect a valid withdrawal of an appeal. See Ramos v. Office of Pers. Mgmt., 82 M.S.P.R. 65, 67 (1999) (finding that the appellant did not intend to withdraw his appeal where he merely responded "Yes" to the administrative judge's questions, appeared to believe that he had "won," was pro se, and did not fully comprehend English). In this case, however, Ms. Williams has failed to establish that her withdrawal was invalid. The evidence shows that the administrative judge asked her, "[D]o you agree that you stated you would voluntarily withdraw the appeal?" Ms. Williams responded, "Yes, I am voluntarily withdrawing the appeal." There is no evidence to suggest any language difficulties, confusion, or lack of comprehension by Ms. Williams. Substantial evidence therefore supports the administrative judge's finding that Ms. Williams's statement constituted a "voluntary and effective" withdrawal of her appeal.

Ms. Williams also asserts that the administrative judge prompted the withdrawal by misinforming her that the appeal was barred under the statutory scheme applicable to her position. That argument is unsupported by the evidence. To the contrary, the record indicates that the administrative judge concluded that the lack of jurisdiction stemmed from Ms. Williams's voluntary resignation pursuant to the settlement agreement. As early as May 9, 2008, the day after Ms. Williams filed her appeal, the

administrative judge issued an Acknowledgement Order explaining that "resignation[s] . . . are presumed to be voluntary . . . ." By Ms. Williams's own description, the teleconferences with the administrative judge involved "much discussion concerning the settlement agreement" (on or about July 8) and "questions [from the administrative judge] about the settlement agreement" entered into on August 13. A discussion of the settlement agreement immediately preceded Ms. Williams's withdrawal during the August 13, 2008, teleconference. Moreover, the administrative judge's initial decision explicitly noted that "a settlement agreement was reached between the parties in earlier proceedings." In fact, there is no evidence in the record that the administrative judge had reached a conclusion regarding the statutory jurisdictional issue. Thus, even assuming that the government's legal position with respect to the statute was incorrect, Ms. Williams has not shown that her withdrawal was based on any misinformation provided to her by the administrative judge.

Nor is there any force to Ms. Williams's contention that she did not have sufficient time to consider whether to withdraw her appeal. The administrative judge raised the issue of withdrawal in early July 2008, and the withdrawal did not occur until August 13, 2008. There were at least three telephone conversations during that period dealing with the withdrawal issue. She has therefore not shown that she lacked sufficient time to make an intelligent decision whether to withdraw her appeal.

Ms. Williams's claim that the administrative judge did not explain the consequences of a withdrawal is likewise unfounded. The administrative judge asked on the record whether Ms. Williams "underst[ood] that, if you withdraw this appeal, you cannot refile on the same dispute and issues with the Board once you've withdrawn?"

Ms. Williams replied: "Yes." There is nothing in the record to contradict Ms. Williams's acknowledged understanding that withdrawal would bar reinstatement of her appeal.

Ms. Williams also argues that her withdrawal decision was involuntary because she was suffering from insomnia and other "mental health issues" on August 13, 2008. The Board has held that it "may relieve the appellant of the consequences of his decision to withdraw [an] appeal . . . when he shows that the withdrawal was involuntary because of mental distress." Auyong v. Dep't of the Navy, 97 M.S.P.R. 267, 269 (2004). In determining whether reinstatement of an appeal is warranted, the Board considers: (1) whether the appellant was represented, (2) whether the appellant has demonstrated that he was mentally impaired at the time, and (3) whether the appellant has shown that he was unable to understand fully the nature of the action in question or to assist his representative in regard to the appeal. Id.

Here, Ms. Williams has not pointed to evidence sufficient to establish the requisite mental impairment. Although Ms. Williams was apparently unrepresented during her conversations with the administrative judge, her evidence as to her mental condition at the time consists only of her statement that she was "consumed by anxiety and could not sleep more than 3-4 hours" the night before she withdrew the appeal. There is no evidence to establish that fatigue and anxiety impaired her ability to understand the nature of her actions. The July 24, 2009, letter from Ms. Williams's physician indicating that as of that date she was being treated for depression, chronic anxiety, and insomnia, and a December 2008 medical evaluation indicating "mild symptoms of depression" and noting a history of "short periods" of therapy from late 2007 to early 2008, do not establish that as of August 13, 2008, when she withdrew her appeal, her mental

appeal, her mental condition was so disabling that she was incapable of understanding the consequences of her actions. Ms. Williams has therefore failed to establish that her decision to withdraw her appeal was involuntary. Accordingly, we sustain the Board's dismissal of Ms. Williams's appeal.