# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

LESLIE C. MACNEIL,

Appellant,

v.

DEPARTMENT OF VETERANS
AFFAIRS,

Agency.

DOCKET NUMBER
SF-0752-15-0455-I-1

DATE: December 31, 2015

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Leslie C. MacNeil, Reno, Nevada, pro se.

Shelley D. Cutts, Esquire, Phoenix, Arizona, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1 The appellant has filed a petition for review of the initial decision, which dismissed her involuntary retirement appeal for lack of jurisdiction. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2 Effective October 31, 2014, the appellant retired from her GS-8 Medical Records Technician position. Initial Appeal File (IAF), Tab 6 at 19. She filed an appeal with the Board asserting that she retired involuntarily.[2] IAF, Tab 1. She declined a hearing. *Id.* at 1.

¶3 The administrative judge correctly advised the appellant of her burden to establish Board jurisdiction over her appeal by establishing that her retirement was involuntary because she lacked a meaningful choice due to the agency's improper actions, i.e., duress, coercion, or misrepresentation. IAF, Tab 2 at 2, Tab 3 at 1-3; *see Salazar v. Department of the Army*, 115 M.S.P.R. 296, ¶ 9 (2010). The appellant alleged that the agency created an intolerable working

---

[2] Because we affirm the dismissal for lack of jurisdiction, we need not reach the issue of whether this appeal was timely filed. *See Dean v. U.S. Postal Service*, 115 M.S.P.R. 56, ¶ 13 n.5 (2010). However, we note that on March 11, 2015, the appellant sought to amend her equal employment opportunity complaint, which was pending before a U.S. Equal Employment Opportunity Commission (EEOC) administrative judge, to include her involuntary retirement claim. IAF, Tab 1 at 8. On March 12, 2015, the EEOC administrative judge dismissed the complaint without prejudice for the appellant to file a Board appeal and await a jurisdictional determination. *Id.* at 8-9.

environment by subjecting her to "unrelenting retaliation" for her equal employment opportunity (EEO) activity and failing to timely provide a reasonable accommodation. IAF, Tab 1 at 5. She alleged that, as a result of the intolerable working environment, she experienced "physical and mental deterioration to such an unhealthy degree" that she felt she had no choice but to retire. *Id.* She further claimed that she was forced to retire because the agency charged her with absence without leave (AWOL) on September 19, 2014, despite knowing that the charge was invalid. IAF, Tab 13 at 3, 31-32.

¶4    The administrative judge issued an initial decision based on the written record, dismissing the appeal for lack of jurisdiction because the appellant failed to establish that her retirement was involuntary. IAF, Tab 16, Initial Decision (ID). The administrative judge found that, before the appellant retired, the agency had offered her the accommodations she requested and concluded its fact finding investigation surrounding the AWOL charge without taking or threatening disciplinary action. ID. The administrative judge concluded that, under those circumstances, a reasonable person in the appellant's position would not have felt compelled to retire. ID. The administrative judge further found that: (1) the agency's actions in investigating the circumstances leading to the AWOL charge were appropriate and within its authority; and (2) the appellant failed to prove by preponderant evidence that the agency subjected her to a pattern of harassment and retaliation. ID.

¶5    The appellant has filed a petition for review.[3] Petition for Review (PFR) File, Tab 1. She disputes that her retirement was voluntary, arguing that: (1) the agency's failure to provide her with a reasonable accommodation for 3 years is indicative of a pattern of coercion, harassment, and retaliation designed to force her retirement; (2) the fact that the agency offered her a reasonable accommodation before her retirement does not negate its failure to accommodate

---

[3] The appellant moved to withdraw her petition for review, but subsequently withdrew that motion. Petition for Review (PFR) File, Tabs 3-4.

her over a 3-year period; (3) the administrative judge "ignore[d] the physical and mental effect" that the agency's failure to accommodate had on her; and (4) the agency did not have a reasonable basis for the AWOL charge and she retired because she believed management would use the charge to remove her. *Id.* at 4-6. The agency did not respond.

The appellant did not establish by preponderant evidence that the agency coerced her to retire by failing to accommodate her alleged disability.

¶6      The appellant suffers from a medical condition which, among other symptoms, causes extreme light sensitivity. IAF, Tab 13 at 97-98. When exposed to the fluorescent lighting generally found in office environments, she experiences blurry vision and eye pain and discomfort, which leads to severe headaches and fatigue. *Id.* at 90-91, 95, 97-98. Beginning in 2011, she requested various accommodations to address this issue, including: modifications to her work station to reduce glare from lighting; a dimly lit environment; a compressed work schedule and periodic breaks during the workday, which would give her time to rest her eyes; a private office; and the option to telework. *Id.* at 84-85, 87, 90-91; IAF, Tab 6 at 58, 69.

¶7      The record reflects that, over the next 3 years, the agency considered the appellant's requests for several different accommodations. In April 2012, the EEO Program Manager notified the appellant that the Reasonable Accommodation Committee (RAC) had recommended providing her with light blocking glasses. IAF, Tab 6 at 66. The appellant explained that her prior experience with these glasses was that they hurt her nose, face, and head. *Id*. at 64. In June 2012, the EEO Program Manager corresponded with the agency's interior designer to assess the possibility of covering the appellant's cubicle. *Id*. at 61-62. The interior designer, however, raised several concerns with a cubicle shield. *Id*. at 61. On December 5, 2012, a supervisor in the appellant's chain of command provided the EEO Program Manager with a memorandum indicating that, as recommended by RAC, the agency would allow the appellant to continue

her compressed work schedule and continue to grant the appellant 10-minute breaks from data entry each hour. *Id*. at 56.

¶8      In October 2013, the agency offered the appellant a private office where she could adjust the lighting to meet her needs. IAF, Tab 13 at 86. It appears that she accepted this offer. IAF, Tab 6 at 21. However, in May 2014, she disputed that a private office was an adequate accommodation and instead requested to work from home, where she asserted she could control not only lighting, but also temperature, humidity, stress and fatigue. IAF, Tab 13 at 84-85. In June 2014, the agency approved the appellant to telework for a 90-day trial period. IAF, Tab 6 at 33-34. The appellant declined the offer. *Id.* at 30. She retired in October 2014. *Id.* at 19.

¶9      On review, the appellant does not dispute that the agency offered the above-noted accommodations, or their effectiveness. Rather, she contends that the agency failed to accommodate her until October 2013 and questions the "timing" of the agency's accommodation offers. PFR File, Tab 1 at 4. The administrative judge considered and rejected these arguments below, finding that: (1) the agency provided the appellant a private office approximately a year before she retired and, when she claimed that that was no longer sufficient, it granted her request to telework; and (2) the appellant unreasonably declined the telework accommodation she had explicitly requested. ID at 8-9. Given those circumstances, the administrative judge found that the appellant was not forced to retire. ID at 8-9. We discern no basis to disturb this analysis. The appellant's mere disagreement with the administrative judge's weighing of the evidence does not establish a basis for review. *See Broughton v. Department of Health & Human Services*, [33 M.S.P.R. 357](#), 359 (1987) (discussing that the mere reargument of issues already raised and properly resolved by the administrative judge below does not establish a basis for review).

¶10      The appellant also argues that the administrative judge improperly "ignore[d] the physical and mental effect" that the agency's delay in providing a

reasonable accommodation had on her. PFR File, Tab 1 at 4. However, an administrative judge's failure to mention all of the evidence of record does not mean that she did not consider it in reaching her decision. *Marques v. Department of Health & Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table). Further, the appellant does not explain what these physical and mental effects were, identify the related evidence that she believes the administrative judge improperly ignored, or explain how any such evidence warrants a different outcome in this appeal. *See generally* PFR File, Tab 1 at 4-6. Accordingly, this argument also fails to establish a basis for review. *See Rumsey v. Department of Justice*, 120 M.S.P.R. 259, ¶ 11 (2013) (citing *Weaver v. Department of the Navy*, 2 M.S.P.R. 129, 133 (1980) (holding that, before the Board will undertake a complete review of the record, the petitioning party must explain why the challenged factual determination is incorrect and identify the specific evidence in the record that demonstrates the error), *review denied*, 669 F.2d 613 (9th Cir. 1982) (per curiam)); *see also* 5 C.F.R. §§ 1201.114(b), 1201.115.

The appellant did not establish by preponderant evidence that the agency coerced her to retire by charging her with AWOL.

¶11    In September 2013, the agency granted the appellant 8 hours of official time to perform union duty on the last work day of each pay period. IAF, Tab 13 at 37-38. On May 23, 2014, the union president advised the agency that the union wished to stop the appellant's official time, stated that those hours would be reassigned to another employee, E.F., once the appellant's official time stopped, and requested a start date for E.F. *Id.* at 46. It appears that the appellant's claimed performance of union duty was called into question on August 21, 2014, when she requested leave under the Family and Medical Leave Act because computer work exacerbated headaches she was experiencing. *Id.* at 72. When she made the request, she stated that she expected to be able to work the following day because it was her union day and those duties did not require the

use of a computer. *Id.* When the Chief of Business Services, J.B., sought guidance on the request, the Chief of Human Resources Management Services questioned whether the appellant still was performing union duty, citing the union's May 2014 email requesting to discontinue the appellant's official time. *Id.* at 70, 72.

¶12 On August 22, 2014, an employee in Business Services stated that she had never seen any email traffic indicating when E.F. was to begin union duty. *Id.* at 70. J.B. then stated that the agency should clarify the formal arrangement between management and the union as to the appellant's union hours before beginning a fact-finding investigation. *Id.* at 75. J.B. then asked the union when the appellant's last union day was. *Id.* at 71. On September 4, 2014, the union vice president responded that the agency would "have to look it up or ask [the appellant]" because it had "been a while." *Id.*

¶13 The appellant's supervisor charged her with AWOL on September 19, 2014, noting that she was unable to reach the appellant by telephone at home and could not verify that she was working in the union office. *Id.* at 47, 57. When the appellant inquired about the reason for the AWOL charge on September 22, 2014, her supervisor advised her that, in light of the May 2014 email, the agency would need verification from the union as to when her union duty ended and whether she had performed union duty on various dates. *Id.* at 57. The appellant responded that no change had occurred in her official time. *Id.* at 49. However, employees in the agency's Labor and Employee Relations (LER) office contended that the appellant stopped performing union duties on or about July 1, 2014. *Id.* at 48, 50.

¶14 The appellant asserts that she was forced to retire out of fear that the agency would rely upon the AWOL charge to remove her. PFR File, Tab 1 at 5. However, there is no evidence, and she does not allege, that the agency took, proposed or threatened any disciplinary action against her before she retired. Thus, we cannot conclude that her retirement was involuntary on this basis. *See Miller v. Department of Defense*, 85 M.S.P.R. 310, ¶ 29 (2000) (explaining that,

to prove a constructive discharge, an employee has an obligation to act reasonably, not assume the worst, and not jump to conclusions too quickly). Even if the agency had proposed or threatened disciplinary action, the appellant's choice to retire rather than oppose the action would not rebut the presumed voluntariness of her retirement. *See Frison v. Department of the Army*, 94 M.S.P.R. 431, ¶ 5 (2003).

¶15    An exception to the above-noted general principle—that an employee's unpleasant choice between retiring and opposing an adverse action does not rebut the presumption of voluntariness—exists if the employee shows that the agency knew or should have known that it could not prevail on the adverse action. *Id.* The appellant contends that the AWOL charge was invalid. PFR File, Tab 1 at 5. However, for the reasons set forth below, we disagree.[4]

¶16    Although the appellant disputed that she had stopped performing union duties, and presented some evidence in support of that assertion,[5] the relevant question is whether the agency had reasonable grounds to impose the AWOL charge. *See Schultz v. United States Navy*, 810 F.2d 1133, 1136 (Fed. Cir. 1987). The union requested the reassignment of official time in May 2014 and the LER office reported that it occurred in July 2014. Further, when asked when the appellant's last union day was, the union vice president did not report that the appellant still was performing union duty, but rather, stated that it had "been a

---

[4] The appellant states that she requested clarification during discovery from the agency regarding the AWOL charge and nothing was provided. PFR File, Tab 1 at 5. To the extent that the appellant is alleging error by the administrative judge, we will not consider such an argument because she failed to file a motion to compel below. *See Boston v. Department of the Army*, 122 M.S.P.R. 577, ¶ 12 (2015). The appellant failed to timely initiate discovery, but the administrative judge nonetheless granted her untimely request for an extension to do so. IAF, Tab 12. In that order, the administrative judge explicitly referred the appellant to the Board's regulations for filing a motion to compel. *Id.*

[5] On October 7, 2014, E.F. advised the appellant's supervisor that E.F. and the appellant were never informed of any official time changes taking effect on or around July 1, 2014. IAF, Tab 13 at 65.

while" and referred the agency back to the appellant. We thus conclude that the agency had reasonable grounds to charge the appellant with AWOL and, therefore, that the charge was not purely coercive.

¶17    Based on the foregoing, we affirm the dismissal for lack of jurisdiction because the appellant failed to establish by preponderant evidence that her retirement was involuntary.

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the U.S. Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                    _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.