# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

PENNY J. SEWARD,
                    Appellant,

            v.

DEPARTMENT OF VETERANS
    AFFAIRS,
                    Agency.

DOCKET NUMBER
DA-1221-14-0541-W-1

DATE: June 17, 2016

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Penny J. Seward, Conway, Arkansas, pro se.

Thomas Kent Smith, Esquire, North Little Rock, Arkansas, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which denied her request for corrective action.  Generally, we grant petitions such as this one only when:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  See 5 C.F.R. § 1201.117(c).

regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order to more fully address the agency's motive to retaliate, we AFFIRM the initial decision.

## BACKGROUND

¶2        The appellant is employed by the agency as a Human Resources Specialist. Initial Appeal File (IAF), Tab 4 at 47. In 2012, she filed a complaint with the Office of Special Counsel (OSC) alleging that the agency had committed prohibited personnel practices in connection with the selection and promotion of certain other agency employees. *Id.* at 11-12. After analyzing the appellant's complaint, OSC informed her in July 2013 that it was taking no further action on her complaint. *Id.* at 12-13, 16. The appellant then contacted her Congressman to ask him to intervene on her behalf with OSC. IAF, Tab 8 at 115-29. She forwarded to the Congressman the same materials she had submitted to OSC, including documents from the Official Personnel Files (OPFs) of the agency employees who were the subjects of the allegedly improper personnel actions. *Id.* It appears that the Congressman's office forwarded the appellant's correspondence, including the supporting materials from the OPFs, to the agency.

¶3        After receiving the materials forwarded by the Congressman's office, the agency initiated an investigation into how and why the appellant had access to the

personnel documents she sent to the Congressman. *Id*. at 113-14. In March 2014, the agency proposed the appellant's removal based on unauthorized access of an individual's personnel records, unauthorized possession of Government documents, and unauthorized disclosure. *Id*. at 107-12. After considering the appellant's response to the proposed removal, *id.* at 102-06, the deciding official sustained the charges of unauthorized access of an individual's personnel records and unauthorized possession of Government documents and did not sustain the charge of unauthorized disclosure, *id.* at 82-84. The deciding official determined that the appellant's removal was justified, but offered her a last chance agreement in lieu of removal. *Id.* The appellant accepted the last chance agreement. *Id.* at 85-86.

¶4 While her proposed removal was pending before the deciding official, the appellant filed a complaint with OSC in which she alleged that the agency had proposed her removal in retaliation for her protected disclosures to OSC and the Congressman. IAF, Tab 8 at 94-101. OSC provided her with a letter closing out her complaint and notifying her of her appeal rights to the Board. IAF, Tab 4 at 46. This appeal followed. IAF, Tab 1.

¶5 On appeal, the administrative judge determined that the appellant had exhausted her administrative remedies and made nonfrivolous allegations that she made a protected disclosure that was a contributing factor in the agency's proposed removal dated July 28, 2014, and thus, she had established Board jurisdiction over her individual right of action (IRA) appeal. IAF, Tab 29, Initial Decision (ID) at 4. The administrative judge advised the parties that the only issue adjudicated would be whether the agency retaliated against the appellant for engaging in whistleblowing when it proposed her removal. IAF, Tab 16 at 1.

¶6 After holding a hearing, the administrative judge found that the appellant engaged in protected whistleblowing when she reported what she believed to be prohibited personnel practices both to OSC and to her Congressman. ID at 9. The administrative judge also found that the appellant established that her

disclosures were a contributing factor in her proposed removal. ID at 10. However, after considering the record evidence, including the hearing testimony, the administrative judge found that the agency established by clear and convincing evidence that it would have proposed the appellant's removal in the absence of her protected disclosure. ID at 10-15.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶7     Federal agencies are prohibited from taking, failing to take, or threatening to take or fail to take, any personnel action against an employee in a covered position because of the disclosure of information that the employee reasonably believes to be evidence of a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health and safety. 5 U.S.C. § 2302(a)(2), (b)(8); *see Jenkins v. Environmental Protection Agency*, 118 M.S.P.R. 161, ¶ 16 (2012). To establish a prima facie case of whistleblower reprisal, the employee must prove, by preponderant evidence, that she made a protected disclosure and that the disclosure was a contributing factor in a personnel action against her. 5 U.S.C. §1221(e)(1); *Jenkins*, 118 M.S.P.R. 161, ¶ 16. If the appellant makes out a prima facie claim of whistleblower reprisal, the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure. 5 U.S.C. § 1221(e)(2); *Jenkins*, 118 M.S.P.R. 161, ¶ 16.

¶8     Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established; it is a higher standard than preponderant evidence. 5 C.F.R. § 1209.4(d). In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and

strength of any motive to retaliate on the part of agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999); *Jenkins*, 118 M.S.P.R. 161, ¶ 16.

¶9 Here, the administrative judge found that the appellant engaged in protected whistleblowing when she reported what she believed to be prohibited personnel practices to both OSC and her Congressman, and that the appellant established that her disclosure was a contributing factor in her proposed removal. ID at 9. The agency does not dispute these findings on review. Thus, the issue to be determined here is whether the agency has shown by clear and convincing evidence that, absent any protected disclosures, it would have proposed the appellant's removal.

¶10 On review, the appellant reasserts her claim that she had a business need to access the employees' records so that she could report a wrongdoing to the proper authorities, and she contends that the agency only learned of the conduct that formed the basis for the proposed removal when it learned of her disclosures. Petition for Review (PFR) File, Tab 1 at 2-9. The appellant argues that, because the conduct and the disclosures are inseparable, the agency cannot show by clear and convincing evidence that it would have taken the same action in the absence of her whistleblowing. *Id.* at 9. Specifically, the appellant asserts that, instead of contacting OSC as she had requested, her Congressman's office erroneously sent the agency a copy of the information she had provided to it. *Id.* at 6. She contends that, because her contact with the Congressman's office was a private, personal, and confidential matter, the agency never should have received a copy of her complaint and its accompanying documents, and thus, it would not have taken the action against her. *Id.* at 6, 8. The appellant argues that the administrative judge failed to give proper weight to her obligation to report a prohibited personnel practice and that her obligation to report a wrongdoing

negated any testimony that she was not authorized to access the personnel records. *Id.* at 2-3.

¶11 The Board will consider evidence regarding the conduct of an agency investigation when the investigation was so closely related to the personnel action that it could have been a pretext for gathering evidence to retaliate against an employee for whistleblowing activity. *Russell v. Department of Justice*, 76 M.S.P.R. 317, 323-24 (1997). When an investigation is so closely related to the personnel action that it could have been a pretext for gathering evidence to retaliate, and the agency does not show by clear and convincing evidence that the evidence would have been gathered absent the protected disclosure, then the appellant will prevail on her affirmative defense of retaliation for whistleblowing. *Russell*, 76 M.S.P.R. at 324. That the investigation itself is conducted in a fair and impartial manner, or that certain acts of misconduct are discovered during the investigation, does not relieve an agency of its obligation to demonstrate by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure. *See* 5 U.S.C. § 1221(e)(2). In considering such evidence, the Board looks at where the investigation had its beginnings. *Russell*, 76 M.S.P.R. at 324.

¶12 In this case, the investigation of the appellant's misconduct was initiated shortly after her Congressman sent the agency a copy of the information she had provided to him. Additionally, the agency official who initiated the investigation was involved in the personnel actions that were the subject of the appellant's disclosures. IAF, Tab 8 at 113, 119. Thus, the investigation could have been a pretext for gathering evidence to use to retaliate against the appellant for whistleblowing. *See Mangano v. Department of Veterans Affairs*, 109 M.S.P.R. 658, ¶ 44 (2008) (finding that an investigation could have been a pretext for retaliation where, inter alia, it was convened by the agency official who was the subject of the appellant's whistleblowing). Nevertheless, the whistleblower protection statutes are not meant to protect employees from their own misconduct,

and an agency is not prohibited from taking an action based on proven misconduct simply because individuals with a motive to retaliate were involved in discovering that misconduct. *Carr*, 185 F.3d at 1326.

¶13 The agency received evidence from the appellant's Congressman that gave it reason to believe the appellant may have improperly accessed the personnel records of other agency employees. To hold that the agency could not investigate the appellant's misconduct simply because the initial source of its information was related to her protected disclosures would effectively shield the appellant from the consequences of her misconduct. We do not read the whistleblower protection statutes as requiring such a result. *See id*. Instead, we find that the appropriate inquiry in these circumstances is whether the agency proved by clear and convincing evidence that it would have taken the same personnel action had it obtained the evidence of misconduct through means other than the employee's protected disclosures.[2] Applying the *Carr* factors, and for the reasons set forth below, we find that the agency has met its burden.

¶14 First, we agree with the administrative judge that the agency had strong evidence in support of the proposed removal. In reaching her conclusion, the administrative judge thoroughly considered the hearing testimony, the record evidence that includes a report of contact documenting the appellant's improper access of individual personnel records, and the appellant's response to the proposal notice. ID at 4-14. The administrative judge also explicitly considered the appellant's claim that she had a business need to access these records so that she could report a wrongdoing to the proper authorities. ID at 12.

¶15 In her response to the proposal notice, the appellant acknowledged that she was wrong to have accessed at least some of the employees' personnel records.

---

[2] The appellant asserts that the Congressman's office erred in forwarding the evidence in question to the agency. PFR File, Tab 1 at 6. Even if the appellant's assertion is correct, she has not shown why the agency should have ignored evidence of misconduct simply because the Congressman's office may have forwarded that evidence in error.

IAF, Tab 8 at 103. She subsequently signed a last chance settlement agreement in which she admitted that the agency's decision to remove her was "fully justified." *Id.* at 86. Although the appellant now asserts on review that she had to sign the agreement to avoid being removed, PFR File, Tab 1 at 9, the fact that she was faced with the unpleasant choice of entering into a last chance settlement agreement or opposing a potential removal action does not rebut the presumed voluntariness of her ultimate choice, *see Schultz v. U.S. Navy*, 810 F.2d 1133, 1136-37 (Fed. Cir. 1987).

¶16        Further, while the appellant asserts on review that she accessed the personnel documents in the performance of her official duties, she acknowledged in her hearing testimony that she "audited" an individual who was not assigned to her area of service. Hearing Compact Disc (HCD). She also acknowledged that, when she determined that the selection of that individual was "illegal" because he did not have the requisite qualifications for the position, she did not tell her supervisor or anyone else that she had determined that his selection was improper. *Id.* Rather, she printed and removed copies of the Standard Form (SF) 50s from the agency and then submitted copies of them to OSC and reported the selection as an alleged prohibited personnel practice. *Id.* On cross-examination the appellant "recanted" her statements in response to the proposed removal, including her acknowledgment that it was wrong to access the employees' OPFs and her admission that she violated various policies and procedures, stating that she now has had time to think about it. *Id.* However, the administrative judge considered her recantation and found that the appellant offered no explanation as to why, given her concern about the legality of the personnel actions, she did not tell her supervisor or any other member of the Human Resources Management team. ID at 12. T.B., another agency Human Resources Specialist, testified that, if she discovered that an employee was not qualified for a position, she would speak up. HCD. T.B. also testified that she was aware of issues involving the qualifications of one of the individuals identified in the appellant's initial

complaint to OSC, but that instead of accessing that individual's OPF, she "voiced her dissatisfaction." *Id.* She testified that she never took home any employees' personnel records or sent the documents anywhere outside of the agency. *Id.* We therefore reject the appellant's assertion that the evidence in support of the proposed removal was weak because her job duties required her to access the personnel records in question.

¶17 The appellant also argues that the administrative judge erred in crediting a supervisor's testimony that the appellant had no business reason to access the records in question. She argues that it "was not reasonable" for the supervisor to remember what work instructions and audits he had assigned her a year before. Similarly, the appellant asserts that the administrative judge erred by considering the proposing official's testimony, and she asserts that his testimony was merely "opinion," "hearsay," and "not evidence." PFR File, Tab 1 at 4. We disagree. The testimony in question concerns the appellant's duties, the incident in question, and why her removal was proposed, and as such is relevant and material evidence that was provided under oath, and therefore, was properly considered and weighed by the administrative judge. *See, e.g.*, *Tisdell v. Department of the Air Force*, 94 M.S.P.R. 44, ¶ 13 (2003) (explaining that an administrative judge has wide discretion to control the proceedings before him, to receive relevant evidence, and to ensure that the record on significant issues is fully developed). Further, in *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 83 (1981), the Board noted that hearsay evidence is admissible in Board hearings "under well settled law that relevant hearsay evidence is admissible in administrative proceedings." Thus, the appellant has shown no error by the administrative judge in considering the proposing official's testimony.

¶18 Regarding the second *Carr* factor, the administrative judge found no evidence of any retaliatory motive on the part of the proposing official. Rather, the administrative judge found that all of the personnel actions predated the proposing official's arrival at the facility, and thus, he played no role in the

alleged prohibited personnel practices. ID at 13-15. Although the administrative judge thoroughly addressed the motive on the part of the proposing official, she did not address whether there was any motive to retaliate on the part of other agency officials. ID at 13-15. When applying the second *Carr* factor, the Board will consider any motive to retaliate on the part of the agency official who ordered the action, as well as any motive to retaliate on the part of other agency officials who influenced the decision. *See Carr*, 185 F.3d at 1326; *McCarthy v. International Boundary & Water Commission*, 116 M.S.P.R. 594, ¶ 62 (2011), *aff'd*, 497 F. App'x 4 (Fed. Cir. 2012). We therefore modify the initial decision to more fully address the agency's motive to retaliate.

¶19    The appellant asserted below that A.U., the Acting HR Chief, retaliated against her based on, inter alia, her initial OSC complaint. IAF, Tab 1. We find that A.U. could have had a strong retaliatory motive as she was previously the appellant's immediate supervisor and testified against the appellant in her prior Board appeal. *See Seward v. Department of Veterans Affairs*, MSPB Docket No. DA-1221-11-0189-W-1, Final Order (Jan. 26, 2012). A.U. also signed the SF-50s that the appellant provided in support of her initial OSC complaint in this case. IAF, Tab 8 at 124-27. Upon the agency's receipt of the documents from the Congressman, A.U. directed the appellant's immediate supervisor to investigate the appellant's actions in accessing the employees' personnel records. *Id.* at 113. However, the only additional involvement A.U. had in this case after initiating the investigation is a "Report of Contact" dated May 30, 2014. IAF, Tab 8 at 91. That document indicates that A.U. received the signed decision from the deciding official regarding the appellant's proposed removal and that A.U. met with the appellant to deliver that decision to her. *Id.* There is no evidence in the record that A.U. had any further role in investigating the appellant's misconduct or proposing her removal. Thus, while A.U. could have had a strong retaliatory motive against the appellant, we find that the strength of the evidence in support

of the proposed removal far outweighs the motive to retaliate. *See Carr*, 185 F.3d at 1326.

¶20    Finally, concerning the third *Carr* factor, the record reflects that the agency has had no other employees engage in similar misconduct. Because there is no evidence showing that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated, we find that the third factor is not a significant factor for the Board's analysis in the instant appeal. *McCarthy*, 116 M.S.P.R. 594, ¶ 65.

¶21    Weighing the three *Carr* factors, we agree with the administrative judge that the agency established by clear and convincing evidence that it would have issued the notice of proposed removal in the absence of the appellant's protected disclosures. While the appellant appears to believe that she was punished for making protected disclosures, her disclosures themselves are separate from her improper accessing of personnel records. The appellant could have made her disclosures without improperly accessing those records; to the extent she needed the personnel records to report wrongdoing, she could have tried to obtain them through the Freedom of Information Act or other authorized means.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8),

(b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. You may choose to request review of the Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both. Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the U.S. Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for your appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:                          _____
                                        William D. Spencer
                                        Clerk of the Board

Washington, D.C.