47 F.3d 1184
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Ross S. GETCHELL, Petitioner,
v.
DEPARTMENT OF VETERANS AFFAIRS, Respondent.
 No. 93-3402.
 United States Court of Appeals, Federal Circuit.
 Jan. 31, 1995.
 
 57 M.S.P.R. 420.
 VACATED AND REMANDED.
 Before NIES,* Circuit Judge, SKELTON, Senior Circuit Judge, and SCHALL, Circuit Judge.
 NIES, Circuit Judge.
 
 
 1
 Ross S. Getchell appeals from the final decision of the Merit Systems Protection Board, Docket No. DE0752920524-I-1 (May 10, 1993), holding that his May 9, 1989 retirement was not involuntary and, therefore, the Board did not possess jurisdiction over his appeal as an alleged removal action. We vacate and remand.
 
 I.
 
 2
 Getchell was employed with the Veterans Administration ("VA" or "agency"), now called the Department of Veterans Affairs, at the Denver VA Medical Center from 1980 until his retirement in May 1989. From 1987 to 1989, he worked as a Medical Supply Technician ("MST") in the Supply Processing and Distribution section ("SPD"). He was a Korean War veteran and had 29 years of government service. In 1975, he underwent an ankle fusion to treat a worsening arthritic condition. In 1987, he requested reassignment from his position of Warehouseman WG-05 to Medical Supply Technician GS-04 (MST) because it had less demanding physical requirements. In 1988, he began having difficulty performing his duties as an MST.
 
 
 3
 In April 1988, Getchell met with his supervisors to discuss reassignment. During the meeting, the Assistant Chief prepared a memorandum which Getchell signed, requesting reassignment to a position in Supply Service, where he could avoid walking and standing, and information on disability retirement. Later that month, the VA detailed Getchell to a temporary light duty assignment in the Personal Property Management Section ("PPD"). Getchell asserts that he performed successfully at PPD for eight months.
 
 
 4
 While at PPD, Getchell applied to the Office of Personnel Management (OPM) for immediate disability retirement from his permanent position in SPD. Upon denial of that application in November 1988, Getchell requested reconsideration. In the interim, he was returned to SPD. Getchell took leave from November 1, 1988, to December 23, 1988. On April 19, 1989, he contacted an EEO counselor at the VA, claiming that he had to perform duties that jeopardized his health and contravened his physician's directions. On May 4, 1989, the agency agreed to provide Getchell with light duty work until the earlier of a reconsideration decision by OPM on his disability retirement or June 19, 1989, when he would begin to effect separation. OPM approved his disability application, effective May 9, 1989.
 
 
 5
 Although retired, Getchell pursued his efforts to be employed by filing a complaint on May 11, 1989, before the agency's EEO office that the VA had not made reasonable accommodations for his handicap and, thus, was guilty of handicap discrimination. The agency denied this charge by decision of August 12, 1992. Getchell filed an appeal with the Board in September 1992, contending that his retirement was involuntary and, in effect, a constructive removal.
 
 
 6
 On December 22, 1992, the Administrative Judge ("AJ") dismissed Getchell's appeal. The AJ determined that Getchell's retirement was not involuntary; that the agency was under no duty to continue the temporary light duty assignments; and that Getchell failed to prove (1) that the VA forced him to apply for disability retirement, (2) that he lacked other alternatives, or (3) that his situation resulted from the coercive/discriminatory acts of the agency.
 
 
 7
 Getchell petitioned the full Board for review, which was denied summarily on May 10, 1993. Getchell then submitted a timely petition for review to this Court.
 
 II.
 A. Involuntary Resignation
 
 8
 The Board lacks jurisdiction over an appeal from an employee who has voluntarily resigned. Cruz v. Department of the Navy, 934 F.2d 1240, 1244 (Fed. Cir. 1991). However, where a resignation is shown to be involuntary, the Board does have jurisdiction to hear the complaint because an involuntary resignation is deemed a "constructive removal." Id. The merits and jurisdiction are inextricably intertwined in an alleged involuntary retirement case. Williams v. Department of Agriculture, 832 F.2d 1259, 1260 (Fed. Cir. 1987). Here, handicap discrimination is the alleged coercion which led Getchell to accept retirement.
 
 
 9
 A retirement request initiated by an employee is presumed to be voluntary. Schultz v. United States Navy, 810 F.2d 1133, 1135 (Fed. Cir. 1987) (citing Christie v. United States, 518 F.2d 584, 587 (Ct. Cl. 1975)). Thus, a retiree who requests retirement has the burden of proof that his retirement is involuntary. Scharf v. Department of the Air Force, 710 F.2d 1572, 1575 (Fed. Cir. 1983). A retirement may be proved involuntary if a petitioner can demonstrate that it was obtained by agency coercion or duress. Schultz, 810 F.2d at 1136. An employee faced merely with the unpleasant alternatives of retiring or being subject to removal for inability to perform the essential duties of the position is not considered to have been subject to involuntary retirement. Id.
 
 
 10
 Although the Board may not review a discrimination claim apart from an adverse action, the Board "may still make an initial determination on a claim of prohibited discrimination where ... that claim is asserted as the sole cause of an involuntary action, and thereby determine Board jurisdiction." Price v. United States Postal Serv., 50 M.S.P.R. 107, 110 (1991) (citing Cruz, 934 F.2d at 1247).
 
 
 11
 In this case, Getchell asserts that the reason for the threatened removal and for his retirement was the VA's refusal to accommodate his disability. The VA argues that this Court does not possess jurisdiction to entertain the "reasonable accommodation" issue. We disagree. While we do not have jurisdiction to decide the merits of Getchell's claim, we may review the Board's decision to determine a threshold question. Ballentine v. Merit Sys. Protection Bd., 738 F.2d 1244, 1247 (Fed. Cir. 1984). Here, we address solely the issue of whether the AJ applied the correct legal standard in determining involuntariness in connection with Getchell's charge that the agency failed to make a reasonable accommodation.
 
 B. Retirement Disability
 
 12
 Under 5 U.S.C. Sec. 8337(a) (Supp. IV 1992), "[a]ny employee shall be considered disabled only if the employee is found by the Office of Personnel Management to be unable, because of disease or injury, to render useful and efficient service in the employee's position and is not qualified for reassignment, under procedures prescribed by the Office, to a vacant position, which is in the agency at the same grade or level and in which the employee would be able to render useful and efficient service."
 
 
 13
 Disability retirement is a last resort, appropriate only when reasonable efforts to preserve the person's employment have failed. We agree with Board precedent holding that the agency must make reasonable efforts to alleviate any service deficiencies through accommodation, including reassignment, before it counsels an employee to seek disability retirement or supports an employee's request, as here, for disability retirement. See Green v. United States Postal Serv., 47 M.S.P.R. 661, 668-70 (1991); Boomer v. Department of the Navy, 34 M.S.P.R. 636, 638-39 (1987). See also Peter B. Broida, A Guide to Merit Systems Protection Board Law & Practice 1675, 1685 (10th ed. 1993), and cases cited therein. This includes reviewing the appropriate vacant positions at the same grade and pay to determine if the employee meets the minimum qualification standards for any of them. If any such vacant positions are available, the employee is not eligible for disability retirement. 5 U.S.C. Sec. 8337(a); 5 C.F.R. Sec. 831.502 (1993). The Board has held that this requirement applies even if the employee is no longer employed by his or her agency due to resignation. Park v. Office of Personnel Mgt., 38 M.S.P.R. 426, 429 (1988).
 
 C. Reasonable Accommodation
 
 14
 A handicapped employee is defined as one who has a physical or mental impairment which substantially limits one or more of such person's major life activities. 29 C.F.R. Sec. 1613.702(a) (1988). A qualified handicapped individual means an individual who, with or without reasonable accommodation, can perform the essential functions of the position in question. Id. Sec. 1613.702(f). An agency is required to make reasonable accommodation to a qualified handicapped individual unless the agency can demonstrate that the accommodation would impose an undue hardship on the operations of its program. Id. Sec. 1613.704(a).
 
 
 15
 If an employee's position cannot be restructured, an agency must consider reassignment as a reasonable accommodation of a qualified handicapped employee. Boomer, 34 M.S.P.R. at 638-39; Ignacio v. United States Postal Serv., 30 M.S.P.R. 471, 486 (Spec. Pan. 1986). An offered position must be of the same tenure as the position from which the employee seeks disability retirement. 5 C.F.R. Sec. 831.502(b)(7) (1993); Noyer v. Office of Personnel Mgt., 44 M.S.P.R. 336, 339 (1990). It must also be at the same grade unless the employee voluntarily agrees to accept a lower grade, which Getchell has offered to do. In addition, the agency is required to consider whether other positions could reasonably be restructured, if necessary, to accommodate his handicap. Boomer, 34 M.S.P.R. at 639. See also Green, 47 M.S.P.R. at 668-70; Ellis v. United States Postal Serv., 37 M.S.P.R. 503, 509-10 (1988). We agree with this precedent. As stated in Boomer, 34 M.S.P.R. at 639: "Because a handicapped employee must be considered 'qualified' if he can perform the essential functions of a reassigned position with a reasonable accommodation, we find that the agency is required to consider whether other positions identified by the appellant could be restructured to accommodate his handicap."[1]
 
 III.
 
 16
 In finding no coercion by reason of handicap discrimination on the part of the agency, the AJ found that Getchell could not perform the duties of his position as a Medical Technician due to lifting, walking, and standing restrictions, that his physical restrictions were permanent, and that his light duty assignments were temporary accommodations. Further, the AJ ruled that an agency need not accommodate a handicapped employee by permanently assigning him to light duty tasks when those tasks do not comprise a complete and separate position. We find this analysis entirely correct and reject Getchell's argument that he is entitled, as of right, to be kept employed permanently in his SPD position with light duty work.
 
 
 17
 The AJ's findings are, nevertheless, insufficient under the correct legal standard for us to support its ruling that Getchell's retirement was voluntary. Where an employee is a qualified handicapped employee, and reasonable accommodation is possible by reassignment, disability retirement is not an option under the statute. 5 U.S.C. Sec. 8337(a); see Ignacio, 30 M.S.P.R. at 486-87. Where the agency assists in obtaining disability retirement, rather than attempting accommodation by reassignment and reasonable restructuring, its actions may be deemed coercive and discriminatory in that the employee effectively has no alternative but to accept disability retirement from the position he occupies which he cannot perform.
 
 
 18
 Although Getchell has argued from the beginning that the issue here is reasonable accommodation for his disability, the AJ's decision is devoid of a ruling on whether the agency made reasonable efforts to place Getchell in a vacant position for which he was qualified and which he could physically perform, with or without significant restructuring thereof. In this connection we note the following evidence:
 
 
 19
 1. Agency Certification of Reassignment and Accommodation Efforts (undated/unsigned) prepared for "Acting Personnel Officer which states:
 
 
 20
 Employee's qualifications and physical limitations were reviewed by all staffing specialists and there are no vacancies at the present time that will accommodate Mr. Getchell's physical restrictions at his current salary rate. [Emphasis added.]
 
 
 21
 Apparently no consideration was given to offering a lower paid position.
 
 
 22
 2. Mr. Morrel, Getchell's supervisor, testified that he believed that Getchell had to be able to perform the essential duties of his SPD position before the requirement of reasonable accommodation became necessary. Morrel also testified that the only time he discussed reassignment was with Getchell's attorney, and that for the agency to consider accommodation, Getchell would have had to have the capability to perform the essential tasks of an SPD technician with or without accommodation. This is, as indicated, an erroneous limited view of the agency's obligation.
 
 
 23
 3. Getchell testified that the duties performed at PPD, which at the time apparently was not a formal position, was later advertised as one. Mr. Duane Lacy, the Assistant Chief, contradicting Getchell, testified that a position was not created in PPD after Getchell was reassigned back to SPD.
 
 
 24
 4. Getchell's answers to discovery state that he applied for three sedentary jobs, was best qualified for two, but was not selected for any.
 
 
 25
 We have not culled the record for all testimony and evidence on the agency's consideration of reassignment. The above evidence is sufficient to show the need for a ruling on this issue.
 
 
 26
 Accordingly, we remand for a determination of whether Getchell could have been reasonably accommodated by reassignment to another position with or without restructuring and at the same or lower grade.
 
 IV.
 
 27
 Each party will bear its own costs.
 
 
 
 *
 Circuit Judge Helen W. Nies vacated the position of Chief Judge on March 17, 1994
 
 
 [1]
 This standard of MSPB caselaw has subsequently been promulgated as a regulation. See 5 C.F.R. Sec. 1614.203(g) (1992)