**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| ARIEL HERNANDEZ-TORRES, | DOCKET NUMBER |
| Appellant, | AT-0752-15-0664-I-1 |
| v. | |
| DEPARTMENT OF THE ARMY, | DATE: September 12, 2016 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Sterling L. DeRamus, Birmingham, Alabama, for the appellant.

Kathryn R. Shelton, Redstone Arsenal, Alabama, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1     The appellant has filed a petition for review of the initial decision, which dismissed his constructive removal appeal for lack of jurisdiction. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order to find that the appellant failed to prove that the agency's alleged misinformation resulted in his retirement, we AFFIRM the initial decision, which is now the Board's final decision.

## BACKGROUND

¶2　　　The appellant held the GS-04 position of Security Guard at the agency's Directorate of Emergency Services (DES) in Redstone Arsenal, Alabama. Initial Appeal File (IAF), Tab 1 at 2. The position was subject to periodic medical exams and medical qualifications and required, among other things, driving vehicles and handling firearms. IAF, Tab 10 at 9-11.

¶3　　　In September 2013, the appellant suffered an epileptic seizure while on duty. IAF, Tab 17 at 16; Hearing Compact Disc (HCD) (01:12:25-01:13:20) (testimony of the appellant). The appellant asserted, and the agency did not dispute, that he voluntarily took medical leave until December 9, 2013. IAF, Tab 10 at 18. He provided the agency with medical documentation that he could return to duty on December 9, 2013, with no driving until March 22, 2014. IAF, Tab 17 at 7, 16. The agency further restricted him during this period from working on patrol or carrying a weapon. *Id.* at 5-6. At that point, the appellant requested to return to work on light duty. *Id.* at 16; HCD (01:18:50-01:23:30) (testimony of the appellant). The agency provided him with a light-duty

assignment beginning in March 2014.  IAF, Tab 10 at 29, Tab 23 at 38.  The light‑duty position was outside of DES and involved serving as a point of contact at the front desk in the Arsenal's "One Stop" facility.  IAF, Tab 10 at 29, Tab 23 at 38;  HCD  (02:07:25−02:07:57)  (testimony  of  the  appellant), (03:07:47-03:08:10)  (testimony  of  M.C.),  (03:34:27-03:34:35)  (testimony of K.D.).[2]  The appellant requested an extension of his light−duty assignment, which the agency granted pending the completion of its assessment of his fitness to return to full-duty status.  IAF, Tab 10 at 29, Tab 23 at 37.

¶4      The appellant submitted a request for a reasonable accommodation dated August 8, 2014, to the agency's equal employment opportunity (EEO) office.  IAF, Tab 17 at 20.  This request stated that he suffered from epilepsy, but responded well to medication and was cleared by his physician to perform any job.  *Id.*  The agency responded in an email sent on August 19, 2014, that the appellant's request was not appropriate for the reasonable accommodation process because he did not list a "defined accommodation or limitation."  *Id.* at 18.  The agency further stated that the EEO office would forward his request to his management office for consideration of returning him to his permanent position.  *Id.*

¶5      On September 9, 2014, the agency's physician recommended against returning the appellant to full-duty status. IAF, Tab 10 at 62-63.  On October 20, 2014, M.C., the Chief of Guards, proposed the appellant's removal based on his alleged medical inability to perform the duties of his position.  IAF, Tab 1 at 2-3.  The appellant, through his attorney, submitted a written reply to the proposed action on November 21, 2014.  IAF, Tab 19 at 5-12.  In his reply, the appellant stated that the only reasonable accommodation that he needed to perform the duties of his position was for the agency to allow him to take his

[2] The appellant's former second-line supervisor, M.C., holds the position of Chief of Guards, and his former fourth-level supervisor, K.D., holds the position of Chief of the Physical Security Division.  IAF, Tab 23 at 9.

anti-seizure medication. *Id.* at 12. Before the agency could render a decision on the proposed removal, however, the appellant applied for disability retirement, and the Office of Personnel Management (OPM) approved his application on March 19, 2015. IAF, Tab 1 at 4-6. OPM found him to be disabled for his Security Guard position based on a seizure/epileptic disorder. *Id.* at 7. His last day on duty was April 3, 2015. IAF, Tab 9 at 61.

¶6        The appellant filed a Board appeal in which he alleged that he was forced to retire and that he was fully capable of performing his duties as a Security Guard. IAF, Tab 1 at 1. He alleged that he applied for disability retirement because he felt that he had no option but to retire and that employees at the agency's Civilian Personnel Advisory Center (CPAC) advised him to do so. IAF, Tab 5 at 1; HCD (01:45:30−01:48:35) (testimony of the appellant). He also alleged that the agency subjected him to disability discrimination by failing to accommodate him and determining that he could not be returned to the full duties of his position. IAF, Tab 24 at 5-8.

¶7        In an order on jurisdiction, the administrative judge informed the appellant of his burden of proving the Board's jurisdiction over his alleged involuntary disability retirement claim. IAF, Tab 3 at 2-4. He ordered the appellant to file evidence and argument on the jurisdictional issue. *Id.* at 4. Both parties responded. IAF, Tabs 5, 9-10. After reviewing the parties' submissions, the administrative judge determined that the appellant had made a nonfrivolous allegation of Board jurisdiction sufficient to entitle him to a hearing on the jurisdictional issue. IAF, Tab 11 at 1.

¶8        After holding a hearing, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction. IAF, Tab 29, Initial Decision (ID) at 1, 12-13. He found that the appellant failed to demonstrate that there was an accommodation available that would have allowed him to continue working in the Security Guard position, or a vacant position to which the agency could have reassigned him. ID at 8 n.3, 11. He also considered the appellant's allegations of

disability discrimination and coercion but found that they failed to show that his retirement was involuntary.  ID at 6 n.2, 12 nn.5-6.

¶9      The appellant has filed a petition for review.  Petition for Review (PFR) File, Tab 1.  The agency has filed a response.  PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶10     The Board's jurisdiction is limited to those matters over which it has been given jurisdiction by law, rule, or regulation.  *Maddox v. Merit Systems Protection Board*, 759 F.2d 9, 10 (Fed. Cir. 1985).  An employee-initiated action, such as a retirement, is presumed to be voluntary and therefore outside the Board's jurisdiction.  *Vitale v. Department of Veterans Affairs*, 107 M.S.P.R. 501, ¶ 17 (2007).  An involuntary retirement is tantamount to a removal, however, and is therefore subject to the Board's jurisdiction.  *Id.*  The appellant bears the burden of proving jurisdiction by a preponderance of the evidence.[3]  5 C.F.R. § 1201.56(b)(2)(i)(A).

The administrative judge properly found that the appellant failed to prove that his disability retirement was involuntary.

¶11     An appellant who claims that a retirement was involuntary may rebut the presumption of voluntariness in a variety of ways, including by showing that his choice to retire was the result of agency misinformation or deception, intolerable working conditions, or an unjustified threat of an adverse action.  *See Mims v. Social Security Administration*, 120 M.S.P.R. 213, ¶ 17 (2013).  The Board, however, has recognized that involuntary disability retirement cases are somewhat different from ordinary involuntary retirement appeals.  *Id.*  To establish the Board's jurisdiction over an involuntary disability retirement appeal, the appellant must show that:  (1) he indicated to the agency that he wished to continue working, but that his medical limitations required a modification of his

---

[3] A preponderance of the evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue.  5 C.F.R. § 1201.4(q).

work conditions or duties, i.e., accommodation; (2) there was a reasonable accommodation available during the period between the date on which he indicated to the agency that he had medical limitations, but desired to continue working, and the date that he was separated that would have allowed him to continue working; and (3) the agency unjustifiably failed to offer that accommodation. *Id.*

¶12 Here, the administrative judge properly found that the appellant failed to demonstrate that his disability retirement was involuntary. ID at 6, 12. Specifically, the administrative judge found that the appellant failed to establish that he notified the agency that his medical limitations required a modification of his work conditions or duties. ID at 9. The administrative judge based this finding on the appellant's testimony and prior statements to the agency that he did not need any modifications to his Security Guard position and that he should be returned to full-duty status because his seizure disorder was controlled by medication. *Id.*; IAF, Tab 10 at 32-33; HCD (02:11:10-02:12:10) (testimony of the appellant).

¶13 In his petition for review, the appellant continues to assert that he is "asymptomatic" of his medical condition and does not require any modification to his working conditions. PFR File, Tab 1 at 7-9. Thus, the appellant has failed to satisfy the first prong of the involuntary disability retirement test. *See Mims*, 120 M.S.P.R. 213, ¶ 17. Further, the administrative judge properly found that he failed to meet his burden of proving that there was a reasonable accommodation available that would have allowed him to continue working. ID at 7-11. The appellant does not challenge this well-reasoned finding on review, and we find no reason to disturb it.

The appellant has failed to show that his retirement was involuntary because it was the product of the agency's misinformation, deception, or coercion.

¶14 In certain cases, the Board has applied the general jurisdictional test for an alleged involuntary retirement in an involuntary disability retirement appeal.

*Mims*, [120 M.S.P.R. 213](#), ¶ 17 n.3; *see, e.g.*, *Vaughan v. Department of Agriculture*, [116 M.S.P.R. 493](#), ¶ 14 (2011) (remanding for a jurisdictional hearing the appellant's allegation that he was coerced into disability retirement because the agency's conduct in creating a discriminatory and hostile work environment caused him to become disabled); *Hosford v. Office of Personnel Management*, [107 M.S.P.R. 418](#), ¶¶ 7, 9, 12-14 (2007) (finding that an appellant's disability retirement was involuntary because her employing agency misinformed her that she was not eligible for immediate optional retirement, and ordering OPM to convert her disability retirement to an optional retirement).

¶15      Here, the administrative judge properly found that the appellant failed to establish the involuntariness of his disability retirement under the general jurisdictional standard for constructive removal appeals.  ID at 6 n.2, 12 nn.5-6; *see Vitale*, [107 M.S.P.R. 501](#), ¶ 19 (stating that, to overcome the presumption that a retirement was voluntary, an employee must show that it was the product of the agency's misinformation, deception, or coercion).      Specifically, the administrative judge found that the appellant was free to choose between contesting his proposed removal, the process of which he was aware as evidenced by his submission of a written reply through his attorney, and applying for and accepting disability retirement.  ID at 12 n.5; *see Lawson v. U.S. Postal Service*, [68 M.S.P.R. 345](#), 350 (1995) (stating that the fact that an employee is faced with an inherently unpleasant situation, or that his choices are limited to unpleasant alternatives, does not make his decision to retire involuntary).

¶16      Further, the administrative judge found that the appellant failed to prove that the agency's action in proposing his removal based on medical inability to perform the duties of his position was coercive because the agency knew that the reason for the proposed removal could not be sustained.  ID at 6 n.2; IAF, Tab 1 at 2; *see Schultz v. Department of the Navy*, [810 F.2d 1133](#), 1136 (Fed. Cir. 1987) (stating that a threatened agency action is coercive if an employee shows that the

agency knew that the reason for the action could not be substantiated). The appellant disputes this finding on review. PFR File, Tab 1 at 10.

¶17    When, as here, an employee occupies a position with medical standards or physical requirements and the finding that he was unable to perform was based on medical history, the agency is required to show the following to establish a charge of physical inability to perform: (1) the disabling condition itself is disqualifying; (2) its recurrence cannot be ruled out; and (3) the duties of the position are such that a recurrence would pose a reasonable probability of substantial harm. *Sanders v. Department of Homeland Security*, 122 M.S.P.R. 144, ¶ 11, *aff'd per curiam*, 625 F. App'x 549 (Fed. Cir. 2015); *see* 5 C.F.R. § 339.206.

¶18    In proposing the appellant's removal, the agency relied on its physician's memorandum reviewing the medical records and fitness-for-duty examination findings for the appellant. IAF, Tab 1 at 2, Tab 10 at 62-63. The agency's physician explained that epilepsy is a disqualifying neurological disorder according to Army Regulation 190-56, Appendix C, section C-3, paragraph d(13). IAF, Tab 1 at 2, Tab 10 at 62, Tab 23 at 27. He determined that there was a continued risk that the appellant would have another seizure and that his medical condition was considered permanent. IAF, Tab 10 at 62-63. He further found that the appellant's seizure disorder may "create a risk of substantial harm to [himself] and the public in several ways." *Id.* at 63. Thus, we find that the appellant has failed to show that the agency knew that the reason for the proposed removal could not be substantiated.

¶19    The appellant also disputes the administrative judge's finding that the agency's proposed removal was not discriminatory based on disability. PFR File, Tab 1 at 8-14; ID at 6 n.2; *see Markon v. Department of State*, 71 M.S.P.R. 574, 578 (1996) (stating that the Board considers allegations of discrimination and reprisal in an alleged constructive removal appeal only insofar as they relate to the issue of voluntariness). The appellant alleges that he can perform the

essential functions of the Security Guard position and that the agency unlawfully discriminated against him by proposing his removal without conducting an individualized assessment of his medical capacity.  PFR File, Tab 1 at 11-14.

¶20    If, as here, an agency asserts that an individual fails to meet the minimum standards established for a position, it may defend against a claim of disability discrimination by asserting that an individual poses a "direct threat" to the health or safety of himself or others in the workplace.  42 U.S.C. § 12113(a)-(b); *Simpson v. U.S. Postal Service*, 113 M.S.P.R. 346, ¶ 14 (2010); 29 C.F.R. § 1630.15(b)(2).  "Direct threat means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation."  29 C.F.R. § 1630.2(r).  Discrimination law requires an agency to conduct an individualized assessment of an employee's qualifications in determining whether an employee poses a direct threat because of a disability.  *McAlexander v. Department of Defense*, 105 M.S.P.R. 384, ¶¶14-15 (2007).  An individualized assessment is "based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence."  29 C.F.R. § 1630.2(r).

¶21    Assuming for purposes of analysis that the appellant is disabled, we agree with the administrative judge's finding that the agency properly performed an individualized assessment of the appellant.  ID at 6 n.2; *see McAlexander*, 105 M.S.P.R. 384, ¶ 14 (finding that, despite not personally examining the appellant, a physician conducted an individualized assessment by basing her opinion on medical reports from physicians who did examine him).  The administrative judge credited the testimony of the agency's physician that he considered the appellant's medical records and concluded that he was at a continued risk for a seizure based on his history of previous seizures and an electroencephalogram test showing abnormal brain activity.  ID at 6 n.2; HCD (00:26:15-00:29:40, 00:38:50-00:40:00, 00:48:45-00:49:30, 00:53:20−00:54:35) (testimony of Dr. D.C.).  We find that the testimony of the agency's physician

shows that he conducted an individualized assessment based on reasonable medical judgment.[4]  *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (explaining that the Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing).

¶22      The appellant claims that the direct threat defense is not available to the agency because it required a "100% guarantee . . . that there would be no further problems related to [the] [a]ppellant's epilepsy."  PFR File, Tab 1 at 13.  We disagree.  The agency's physician considered such factors as the potential for "sudden incapacitation," as well as the risk of recurrence, which he assessed at between 18% to 60%, depending on the amount of time that had passed since the last seizure.  IAF, Tab 10 at 62-63; *see Cano v. U.S. Postal Service*, 107 M.S.P.R. 284, ¶ 14 (2007) (indicating that factors relevant in determining whether an individual with a disability poses a direct threat include the nature of the risk, the severity of the potential harm, the probability that the potential harm will occur, and the imminence of the harm); 29 C.F.R. § 1630.2(r) (stating the same factors slightly differently).  He also considered the possible side effects of the appellant's medication and the nature of the appellant's job duties.  IAF, Tab 10 at 62-63.  Ultimately, the administrative judge concluded that there was "a risk of substantial harm to the officer and the public" from a seizure "occur[ing] while driving, directing traffic, or result[ing] in loss of control of a weapon."  *Id.* at 63.

¶23      The administrative judge also considered the appellant's claim that the agency allowed other security guards with disabling medical conditions to

---

[4] We find that the appellant's assertions that the agency's physician relied on outdated medical information, was outside of the same medical specialty as the appellant's physician, and failed to consider several factors affecting the risk of seizure recurrence, do not provide reasons to disturb the administrative judge's finding that the agency conducted an individualized assessment.  PFR File, Tab 1 at 10-12; IAF, Tab 19 at 35‒36.

perform the full duties of the Security Guard position without restrictions. ID at 12 n.6; HCD (01:59:00-02:02:15, 02:07:50-02:09:20, 2:27:40-2:28:40, 2:39:10−02:41:50) (testimony of the appellant), (03:21:30-03:24:50) (testimony of M.C.), (03:38:00-03:40:10, 03:44:00-03:45:10) (testimony of K.D.). The administrative judge found that the testimony established that the agency proposed the removal of another security guard with epilepsy for medical inability to perform his position due to epilepsy but that he too ultimately obtained disability retirement. ID at 12 n.6; HCD (03:21:30-03:24:50) (testimony of M.C.). The administrative judge further found that the evidence of other employees with disabling medical conditions does not support a finding of disability discrimination that rendered the appellant's disability retirement involuntary. ID at 12 n.6.

¶24    Finally, the appellant argues that he applied for disability retirement based on the recommendation of personnel in CPAC. PFR File, Tab 1 at 6, 12-13. Although he raised this argument below, the administrative judge did not resolve it. ID at 5. We modify the initial decision to find that the appellant has failed to prove that his retirement was the product of the agency's misinformation. When there is a claim that an involuntary action resulted from misinformation, an appellant must show that: (1) the agency made misleading statements; and (2) he reasonably relied on the misinformation to his detriment. *Aldridge v. Department of Agriculture*, 111 M.S.P.R. 670, ¶ 8 (2009). We find that the appellant did not reasonably rely on the advice of CPAC and he was aware that he had the option to contest his proposed removal because he submitted a written reply to it through his attorney. IAF, Tab 19 at 5-12.

¶25    Accordingly, we find that the administrative judge properly dismissed the appeal for lack of jurisdiction.

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the U.S. Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD: _____
Jennifer Everling
Acting Clerk of the Board

Washington, D.C.